NASH *vs.* MOSHER.

A party having a lien upon goods may transfer the possession subject to the lien to a third person, who may lawfully hold the property until the lien be paid ; but if the transferree sell the goods, the owner is remitted to his origi. nal rights, freed from the lien, and may bring trover against him. The owner cannot, however, bring trespass as the transferree came lawfully into possession by the delivery of the bailee.

THIS was an action of *trespass de bonis asportatis* tried at the Washington circuit in November, 1835, before the Hon. ESEK COWEN, then one of the circuit judges.

The suit was brought for the taking of a wagon, and sundry other articles of personal property. The defendant had a *distress warrant* against the plaintiff for rent due. He found the wagon in the possession of one Bates, a blacksmith, who had a *lien* upon it for work done by him to the amount of $15. Bates was sworn as a witness ; his testimony was not very explicit as to the *manner of the taking* of the wagon by the defendant, but he substantially testified, that upon the defendant becoming accountable to him for his lien, he *consented* to the taking of the wagon, and that the defendant had subsequently paid him his lien. The wagon was sold by the defendant at public vendue, and bought in by himself. The defendant attempted to justify under the *distress warrant*, but the judge held the affidavit of rent in arrear to be defective. The judge ruled that a mechanic's lien was in its nature assignable, and that the evidence established the fact of an assignment of the lien from Bates to the defendant, who was therefore legally entitled to the possession of the wagon, until the lien was paid by the plaintiff ; that the plaintiff could not maintain *trespass* for the *wagon*, but was entitled to a verdict for the other property taken. The jury, under the direction of the judge, found accordingly.

Subsequently a motion was made before Judge Cowen as circuit judge for a new trial ; which application was *denied* by him. Upon that occasion, the following opinion was delivered :

" Of the general right of a mechanic to sell his debt and transfer the property held in *lien* as security, I perceive there was formerly considerable doubt. This and all other like liens raised by law for the benefit of trade and manufactures, as I take it, stand on the same footing in point of assignability with the *factor's lien.* Of this BUL-LER, J. said in *Daubigny* v. *Duval*, 6 T. R. 604, 606, "a lien is a personal right, and cannot be assigned to another." That, however, was not held so plain, but that when *M'Combie* v. *Davies*, 7 East, 5, came to be heard, Lord Ellenborough put it that the factor could not *tortiously* pledge the goods though he might continue the lien by delivering them over to another, as his servant, to hold the possession in his own name. His lordship evidently thinks that he cannot go further. He concludes at first that a parting with the possession to another assignee, would be a waiver, or forfeiture of the lien. Such he assumes to have been the notion of Buller, J. in *Daubigny* v. *Duval ;* for he says Lord Kenyon who dissented there, seemed afterwards fully to have acceded to the doctrine, when he says in *Sweet* v. *Pym*, 1 East, 4, " the right of lien has never been carried farther than while the goods continue in possession of the party claiming it." I admit that the court in *M'Combie* v. *Davies* finally seem to agree that if the goods and lien be passed over, as a mere security to another for a debt, the lien might thus be preserved. 7 East, 7, 8 ; and see 7 Cowen, 680 ; 11 Wend. 79. If it may be passed over as a security, of course it may be sold, provided the parties, vendor and vendee, do not seek to pass a greater right than the lien, but both act in strict subordination to the claim of the principal owner. I confess I see nothing in this repugnant to the interests of commerce ; and it accords with what is certainly the general rule, that all rights of property, whether they be in possession, in action or retainer, are assignable. Indeed it now stands admitted, " that a factor has a right to assign or deliver over the goods as a pledge or security to the extent of his lien thereon, if he avowedly confines the assignment or pledge to that ; and does not exceed his interest." Story on Bailm. 216, and the cases there cited, note 2. 2 Kent's Com.

489 of the 1st, and 626 of the 2d ed. *Urquhart* v. *McIver*, 4
Johns. R. 103, 115, 116, 117. *Urquhart* v. *McIver*, seems
to settle the question in favor of the position as laid down
by the two learned commentators. There a ship was as-
signed by the factor as a security to the extent of his lien.
That *per se* was held not to be tortious; but a valid trans-
action. Bates did nothing more in this case; and I incline
to think that the transaction, as far as he acted, was a valid
one. Mr. Justice Story thinks that it has not yet been hold-
en with us that even a tortious pledging by the factor should
work a forfeiture of the lien, in the hands of the pledgee;
though his general incapacity to pledge has been often re-
cognized. Story on Bailm. 287. He says it is not very
easy to distinguish between the power of one holding an
express lien, as a mortgagee or pledgee, and the person who
is entitled to the implied lien. Id. 218.

But whatever may be the power of the lien-holder, it is
very clear that he must follow that power very strictly. If
he sell the goods, all the cases agree that this is tortious.
It was said in argument, that this wagon had not been sold
by the original lien-holder. That is true—Bates did not go
beyond his lien; he says, "If I have my lien, I am neutral;
I shall not stand in your way." He finally yields permis-
sion that the wagon shall be taken by the defendant sub-
ject to his (Bates') rights. It is clear that the defendant
could take no greater right than Bates held, and yet he, the de-
fendant, goes on to take the wagon, makes sale of it at
auction, and himself bids it in to satisfy his own debt.
Bates' right was not an express lien given by the owner, but
one implied by law. Looking to the horn-book of the law,
we see that "If an authority or license be given to one by
law, and he abuse it, he is a trespasser *ab initio*." Bull.
N. P. 81, old ed. *Six Carpenters' case*, 8 Rep. 290. One
case put in Coke is that of a purveyor taking cattle lawfully,
by the king's commission, but selling them unlawfully. 8
Rep. 291. And this I imagine to be the true principle on
which sales and pledges by a factor and other lien-holders,
in any manner beyond their authority, rest. Their right is
given by law, but they abuse it. It is not exactly a tres-

NEW-YORK,
May, 1838.

Nash
v.
Mosher.

pass *ab initio*, but it is in the nature of one. Here it may be admitted there was adequate authority to hold the wagon for the $15, had the matter stopped; but it is sold absolutely. This is agreed by all the cases, ancient and modern, to be such an act of insubordination as shall work a forfeiture of the lien. The last case with us is *Mount v. Williams*, 11 Wendell, 77, 79. In England the rule has been extended to a sale by a pledgee for debt, a case where the authority comes from the party. *Samuel v. Morris*, 6 Carr. & Payne, 620. This was of course not a sale to repay the money loaned, but a general sale, which Parke, B. said was such a wrongful act as would re-vest the property in the pledgor. It is a disclaimer and an attempt virtually to displace the rights of the general owner. Even in the case of lessor and lessee for years under a sealed lease, a like disclaimer has been holden to be an act of disloyalty which subverted the relation of the parties, nullified the lease and let in the lessor to his ejectment. *Jackson, ex dem. Van Schaick v. Vincent*, 4 Wendell, 533. All the cases agree that the mere user of any article in any way not necessary to its safety or preservation, by a distrainor, makes him a trespasser *ab initio*. Why? Because he came or should have come to the possession for another purpose, although he colorably took possession under a lawful authority, yet the subsequent abuse leads to the presumption that he all along acted fraudulently, never intending to come in his ostensible character.

The cases already cited of *Mount v. Williams* and *Samuel v. Morris:* indeed all the cases of tortious sales by lien holders, answer the objection that the plaintiff at the time of the wrong done held no right of present possession, on the ground that he had not tendered the debt secured by the lien. That is destroyed by the abuse. The property is placed in the hands of a constable; appraised, advertised and sold; a positive misfeasance. The plaintiff becomes remitted to and re-invested with his original rights cleared of all lien:

There is, on the whole, no doubt that an action of *trover* would have lain in this case; and had the original taking been under authority of law, no doubt could remain that

trespass would lie. The difficulty lies in carrying back the
abuse to the original taking. The wagon was delivered to
Bates by the plaintiff's own hand, the hand of the original
owner. It was the subsequent right of retainer only which
arose by operation of law. The *Six Carpenter's case* can-
not carry us back further by the wrong than to the raising
of the lien. All before that was under express authority,
not so destructible by subsequent abuse as to raise the action
of trespass. Bates must be taken, not as selling this wa-
gon, but as consenting that the defendant should take on
paying his lien, which was done. It passed from the bailee
by his consent and delivery. The case is a clear one for
trover, according both to *Mount* v. *Williams*, and *Samuel*
v. *Morris*.

But the question recurs, will *trespass lie?* Now it is set-
tled that if the bailee had sold and delivered the wagon to
the defendant, he would not be liable in trespass. *Marshall*
v. *Davis*, 1 Wendell, 109, 114. Here as in that case, is
title enough in the plaintiff to maintain the action at the
time of the abuse, and we must look to the time and charac-
ter of the taking. *Marshall* v. *Davis* seems to put the
right to the action, on the non-consent of the bailee. If it be
delivered by the bailee, trespass lies not against the person
to whom it is delivered. If sold or taken without delivery,
trespass would lie for the taking; and such is the distinction
which seems plainly to follow from the authorities cited by
the chief justice, and the original *dicta* on which they rest.
Viner cites Br. Tresp. pl. 217, who cites per Fineux and
Tremail, Js., 21 H. 7, 39. In the same case and by the
same justices, a like distinction is made in respect to a gift or
sale of goods by an infant; if he deliver them, trespass lies
not; but if taken without delivery it lies. See Vin. Tresp.
(M. 12.)

Now let us look back again to this case. Bates, the holder
of the wagon and the lien, tells the defendant not to take it
and sell, unless this be done subject to his lien. The de-
fendant takes and sells and pays the lien. This amounts to
a full transfer of the lien, or it is a taking of the property
and holding it subject to the right of the lien-holder; per-

haps a kind of sub-bailment. I do not see that Bates gave any consent to the sale, but a mere permission to take, subject to his lien. It was saying "unless you assume my lien, you shall not take; if you assume it, then you take." The wagon is taken and the lien liquidated and paid, on the exact computation, as between the bailor and bailee. Then begins the wrong on the part of the defendant by which all right is forfeited; but is he a *trespasser*, or only liable to an action of *trover?* Is not this a mere forfeiture of goods which came peaceably into his hands? A forfeiture which vests a present property in the plaintiff, gives him a present right to bring *trover*, or *detinue* like *Marshall* v. *Davis*, but neither trespass nor replevin, as our law stood under the statute of 1813. The taking and sale were beyond all doubt a conversion. Were they a trespass, being accompanied with this con sent of the bailee? It was denied, in argument, that here was a consent. On the original act of Bates there might be some doubt, but he subsequently ratifies the sale of his interest and takes pay for the lien, or if you please, the lien is paid to him and discharged. Still it is a case of consent on the part of Bates, that his possession, a lawful one in itself, should pass into the hands of the defendant. Is not this a delivery? The bargain is perfect, the possession passes, and he is paid his money. As between him and the defendant, the bargain would be decreed executed, by a delivery and payment within the statute of frauds.

On the whole it is with some diffidence that upon this particular case I come to the conclusion that trespass will not lie. The action is brought by the general property man, who acquired a present right of possession by the wrong done on the part of the defendant.

I think I was wrong at the circuit in saying that the defendant after what he had done, could hold on till he was reimbursed the money he paid Bates; but on the nature of the taking, I think this particular action of trespass cannot be maintained and a new trial must be denied.

From the decision of Mr. *Justice* COWEN as circuit judge the plaintiff appealed to this court, where the cause was argued by

*M. T. Reynolds*, for the plaintiff.

*J. Holmes*, for the defendant.

After advisement, THE COURT, upon the authority of the case of *Marshall* v. *Davis*, 1 Wendell, 109, affirmed the decision of Judge COWEN, and denied a new trial.

New trial denied.

---

KIMBALL & ROWE *vs.* DAVIS & BROWN.

Proof of the hand-writing of the subscribing witness to a deed is sufficient evidence of its execution, although the witnesses be dead; and the party seeking to establish the deed is not bound, in addition to such testimony, to give evidence of the hand-writing of the grantor, or of other facts to show his identity.

Where a commission to take testimony is sued out by the plaintiff, in which the defendant joins and furnishes cross-interrogatories, and the commission with the depositions of the witnesses be returned, and it does not appear that the last general cross interrogatory has been put to and answered by the witnesses, and the defendant on that ground objects to the reading of the depositions in evidence, the objection in general is fatal.

The plaintiff, however, is at liberty in such case to show that the commission was executed and the depositions signed by the witnesses in the presence of the counsel of both parties, and that no objection was made at the time, by the counsel for the defendant that all the interrogatories were not answered; and on such facts appearing, the depositions will be received, notwithstanding the objection.

It seems that though the interrogatory was not put, or the answer suppressed, that an objection on that ground could not be taken at the trial, if the counsel of the party was present at the execution of the commission and did not then object; the remedy, if any, would be by motion to quash the return to the commission.

The declarations of witnesses, whose testimony has been taken under a commission, made subsequent to the taking of their testimony, contradicting or invalidating their testimony as contained in the depositions, is inadmissible in evidence, if objected to. The only way for a party to avail himself of such declarations is to sue out a second commission.