EDWARD A. STANLEY, Administrator, vs. WILLIAM GAYLORD.

If the bailee of a chattel, who has no authority, as against the bailor, to retain or dispose of it, mortgage it as a security for his own debt, and the mortgagee take possession under the mortgage, the bailor may maintain an action of trespass therefor against him. WILDE, J., dissenting.

THIS was an action of trespass, for taking and driving away a cow belonging to the plaintiff's intestate, Fanny Thayer, in her lifetime. The case was tried in the court of common pleas, before *Washburn*, J., and came before this court upon exceptions there taken by the defendant, against whom a verdict was rendered, to the rulings and instructions of the judge.

The bill of exceptions stated as follows :

The plaintiff, to sustain his action, called Henry J. Franklin, from whom it appeared in evidence, that Mrs. Thayer, the plaintiff's intestate, lived in Springfield, and the witness in Amherst ; that, in the fall of the year 1840, an exchange was made by the witness and Mrs. Thayer, at Springfield, of a cow then belonging to her and in the possession of Franklin, for the cow, which is the subject of the present suit, and which was then also in the possession of the witness, Franklin, at Amherst.

Whether there was or was not an actual delivery to Mrs. Thayer, before the making of a paper, by which Franklin undertook to mortgage the cow to the defendant, was a point in controversy, upon which the jury did not return a special finding.

The defendant relied, in defence, upon the paper or mortgage above mentioned, which was executed in February or March, 1842, for the purpose of securing a *bona fide* debt due from Franklin to the defendant, and under which the latter claimed and took possession of the cow, on the 20th of October, 1842.

There was evidence, that, after the exchange, the cow in question remained upon Franklin's farm ; but whether in

pursuance of any contract, and, if so, what were the terms of such contract, was a matter in dispute.

The defendant contended, that even if the cow belonged to the intestate, yet, being in the possession of Franklin, when the mortgage was made, and the defendant not having notice of such ownership by the intestate, this action of trespass could not be maintained against him, and requested the judge to instruct the jury accordingly.

The judge declined so to instruct the jury, but instructed them, " that if the cow belonged to the intestate by a title which had been consummated by a delivery, and was upon the farm of Franklin, as a keeper for the intestate, or by the favor and indulgence of the intestate, without any authority to hold possession of her as against the intestate, or to dispose of her, the defendant could not justify the taking, by virtue of the mortgage, and that the plaintiff could maintain trespass for such taking, although done without notice of the ownership of the intestate."

The jury returned a verdict for the plaintiff, and the defendant filed exceptions.

*C. P. Huntington,* for the defendant.

The facts show, that the taking by Gaylord was lawful or excusable, under a claim of right, and in virtue of a mortgage given to secure a debt due from Franklin, the bailee, who was in actual possession, claiming ownership and a disposing power.

The taking was lawful or excusable, and, in either case, trespass cannot be maintained. There was no previous demand of Gaylord ; nor was there any notice to him, or any knowledge on his part of any other claimant.

On the former hearing of this case, 10 Met. 82, there was an intimation given by the court, that trespass would not lie, and that an amendment should be moved for. See the authorities cited by Hubbard, J., at p. 84, and also *Boise* v. *Knox,* 10 Met. 40, 44 ; *Salisbury* v. *Gourgas,* 10 Met. 442, 448 ; *Leonard* v. *Tidd,* 3 Met. 6. In the last case, at p. 8, the court speak of the defendant's " restoring " the property,

but the facts do not so find.   In 2 Greenl. Ev. § 642, it is said, that " a mere purchase of goods, in good faith, from one who had no right to sell them, is not a conversion of them, against the lawful owner, until his title has been made known and resisted."

Where one obtains possession of goods, in good faith, by the delivery or consent of the party in possession, the owner cannot maintain trespass.   *Marshall* v. *Davis,* 1 Wend. 109 ; *Nash* v. *Mosher,* 19 Wend. 431 ; *Root* v. *French,* 13 Wend. 570 ; 3 Steph. N. P. 2695, and cases there cited, note 45 ; 2 Wms. Saund. 47 *a, b, c* ; 1 Chit. Pl. 155, 156, 170 ; Com. Dig. Trespass, D ; Bac. Ab. Trespass, C, 2 ; Trover, C ; Bro. Ab. Trespass, 216, 295, recognized in *Hunt* v. *Holton,* 13 Pick. 216, 220 ; Viner, Trespass, M. 11.

In the cases relied on by the plaintiff, the defendant was a wrong-doer, invading the rights of a bailee, or taking the thing against his consent ; and they tend to show, that trespass might be maintained against Franklin, as a wrong-doer, rather than against Gaylord, an innocent mortgagee or purchaser.

In the present case, there was a mere taking of possession, under a claim of right, by leave of one having the lawful custody, and claiming to be the owner ; there was no conversion, no destruction, no abuse, no wrongful act, and, of course, no trespass.

If A should go to the keeper of a livery stable, who had B's horse to keep, and innocently purchase the horse, — the stable-keeper holding himself out as the owner, — could A be liable for taking the horse away, until after demand and conversion ?

*C. Delano,* for the plaintiff.

The bill of exceptions shows, that there was a valid exchange, in 1840, consummated by a delivery to the plaintiff's intestate ; that Franklin continued in possession, afterwards, as her gratuitous bailee, by special indulgence and favor, down to the time of the alleged trespass ; that Franklin had no authority to sell or dispose of the cow, but that Mrs.

Thayer had a present right, at any time, to reclaim her; and that the cow was taken possession of by the defendant, who claimed to hold her as mortgagee.

Assuming these to be the facts, it .is clear, that from the moment of the delivery, Mrs. Thayer had a constructive possession, for the violation of which trespass will lie. Bac. Ab. Trespass, C, 2; *Walcot* v. *Pomeroy*, 2 Pick. 121.

But the objection is, not to the sufficiency of Mrs. Thayer's possession, but that the taking by the defendant was not tortious, or, in other words, that no action can be maintained against him, until after a demand and refusal.

The position of the plaintiff is, that the taking itself was tortious, in the sense of the law, so that no demand was necessary.

1. This is clear upon authority.

In order to maintain trespass, it is not necessary to prove actual force in the taking; force enough to do the act, and to acquire the possession against right, and without the consent of the owner, is sufficient. *Sec. Cong. Soc. in N. B.* v. *Howard*, 16 Pick. 206.

A demand is often necessary in trover, where the original taking is not tortious, in order to prove a conversion; but not where the taking is tortious. · *Boise* v. *Knox*, 10 Met. 40.

So, replevin lies for a tortious taking, without a demand, and for a wrongful conversion after a demand. *Badger* v. *Phinney*, 15 Mass. 359.

Authorities, then, which show that trespass may be sustained upon facts like the present, or that upon the same facts, either trover or replevin may be maintained, without a previous demand, are in point.

In Bac. Ab. Trespass, E, 2, it is said:

" If the bailee of goods give or sell them to J. N. but do not deliver them, and J. N. take them, an action of trespass lies; because, as the gift or sale of a person, who had only a special property in the goods, did not transfer a property to J. N., his possession of the goods was tortiously obtained."

The case here supposed is precisely the case at bar;

inasmuch as there never was any delivery of possession by Franklin to Gaylord ; and, if that were the turning point, the authority would be decisive against the present action.   But the delivery is not the material element ; for, in the next case but one put by Bacon, a delivery, is one of the facts supposed :

" If a servant, who has only the custody of his master's goods, give or sell them to J. N. and deliver them, and J. N. carry them away, this action lies ; because, as the servant had no power to transfer a property in the goods, the possession by J. N. was tortiously obtained."

The reason given, why, in both cases, the possession was regarded as tortiously obtained by J. N., is, because the bailee and the servant had no power to transfer the property ; and that the whole question, under the old law, turned on the bailee's " power to transfer a property," is further evident from another case stated by Bacon :

" A servant, who is empowered to sell the goods of his master, gives them to J. N. and delivers them, and J. N. carries them away, here trespass does not lie ; because, as a power to sell implies a power to transfer a property in them, the possession by J. N. was lawfully obtained."

In all these cases, the material consideration was, whether or not there was an authority in the bailee, either express or implied, to transfer a property to a stranger.

Archbold, N. P. (2d ed.) 478, lays down the same doctrine, contained in the first and second of the passages just quoted from Bacon, in nearly the same terms.

The case of the *Sec. Cong. Soc. in N. B.* v. *Howard,* 16 Pick. 206, was an action of trespass, in which the law applied might be stated in the precise terms of the second citation from Bacon.   In this case, indeed, there was a demand ; but, as the action was trespass, and was sustained, the taking must have been tortious, and the demand, of course, superfluous.

In the case of *Hyde* v. *Noble,* 13 N. H. 494, the plaintiff was the owner of a part of a cargo, which the master had sold, — both he and the purchaser supposing that the former

had authority to sell, — and the action was brought and maintained against the purchaser, without a demand; the court saying expressly, that a demand and refusal were not necessary. The reason must have been, that the mere acquisition by the purchaser from the master, who had no authority to sell, was in itself tortious.

The case of *Galvin* v. *Bacon*, 2 Fairf. 28, which was an action of replevin, was evidently decided upon the same ground, namely, that the act of an agent or bailee, in selling property which he has no authority to dispose of, is technically tortious. In that case, the plaintiff, being the owner of a horse, bailed him to A for use, for a limited period, under the expectation of a purchase by the latter. During the bailment, A, for a valuable consideration, and without notice, sold the horse to B, who, in like manner, sold him to the defendant. It was held, that the owner might maintain replevin against the last purchaser, without a demand.

2. It is contended, also, that upon the analogies of the law, this action may be maintained.

The cases, already mentioned, of trover and trespass, show that upon facts very analogous to those of the present case, actions may be maintained without a previous demand.

There are other cases, too, equally analogous, where trespass has been maintained against a sheriff or a creditor, attaching in good faith goods in the possession of a debtor, and apparently owned by him, when, in fact, they were owned by a third person, and only in the custody of the debtor as bailee. *Walcot* v. *Pomeroy*, 2 Pick. 121, and *Holly* v. *Huggeford*, 8 Pick. 73, are examples of this class of cases.

It is no answer to the argument drawn from these cases to say, that the officer or creditor is to justify under his precept, which only commands him to take the property of the debtor. The question is not, whether the officer, or attaching creditor, or a *bona fide* purchaser, acquires any property, by the attachment or purchase, (in both cases, it must be conceded, he cannot,) but whether the apparent ownership in the bailee in

the one case any more than in the other, entitles the party taking the property to a demand before suit.

If the present action cannot be maintained, this inconsistency will follow. If Gaylord, instead of taking a mortgage, had attached the cow, as a security for his debt, he would have been liable in trespass; while, in the present state of facts, though he acquired the possession of the cow no more innocently, and in no better faith, this and every other action must miscarry, until after a demand.

The opinion of a majority of the court was delivered by

METCALF, J.*  Under the instructions given to the jury, upon the evidence submitted to them, their verdict has established these facts; viz., that the cow in question belonged to the plaintiff's intestate, by a title consummated by delivery, and was in the possession of Franklin, without any authority in him, as against the intestate, to retain or dispose of her; and that the defendant took her, claiming her under a mortgage made to him by Franklin after the intestate's title was consummated. And the question is, whether the jury were rightly instructed that the plaintiff could maintain trespass for such taking, although the defendant had no notice that the intestate owned the cow.

The evidence showed that the taking was in the lifetime of the intestate; and if she could have maintained an action of trespass, the plaintiff may maintain the like action. *Emerson* v. *Emerson,* 1 Vent. 187; 1 Saund. 217, note; Rev. Sts. *c.* 93, §§ 7, 8.

This preliminary point has not been contested by the defendant's counsel. But he contends that one who, in good faith, obtains possession of chattels, by delivery or consent of a party in possession, is not liable to an action of trespass by the true owner; the taking, in such case, being lawful or excusable. This position is denied by the plaintiff's counsel; and various authorities have been referred to, which are now to be considered.

---

* *Forbes,* J., did not sit in this case.

In Bac. Ab. Trespass, C, 2, and E, 2, some distinctions are laid down, which are taken from Brooke's Abridgment, where the year books are cited. Thus : " If a servant, who is empowered to sell the goods of his master, give them to J. N., and deliver them, and J. N. carry them away, an action of trespass does not lie ; because, as the power to sell goods implies a power to transfer a property in them, the possession of the goods by J. N. was lawfully obtained. But if a servant, who has only the custody of his master's goods, give or sell them to J. N., and deliver them, and J. N. carry them away, this action lies ; because, as the servant had no power to transfer a property in the goods, the possession of the goods by J. N. was tortiously obtained." Bro. Ab. Trespass, 295, is cited.

Another passage is cited by Bacon from Bro. Ab. Trespass, 216, which is also found in Fitz. Ab. Trespass, 245, and in 20 Vin. Ab. Trespass, M, 11, taken from the year book 21 H. 7, 39, where it stands thus: " Note. By Fineux, C. J., and Tremaile, J. If I bail goods to a man, and he gives or sells them to a stranger, and the stranger takes them without delivery, he is a trespasser, and I shall have a writ of trespass against him ; for by the gift or sale the property was not changed, but by the taking ; but if he make delivery of them to the vendee or donee, then I shall not have a writ of trespass."

If these passages are to be taken as settling the distinction between the action of trespass *vi et armis* and other actions, it is clear that the present action is well maintained. For, as the case stands, upon the exceptions, the defendant took the cow without any delivery by Franklin. The evidence shows that the mortgage was made to the defendant in February or March, 1842, " under which he claimed and *took* possession of the cow," in the month of October following ; and the judge instructed the jury, that " the defendant could not justify *the taking* by virtue of the mortgage." It does not appear that any evidence was given of a delivery by Franklin, or that any question was made, at the trial, concerning a deliv-

ery by him. If Franklin was the bailee of the plaintiff's intes-tate, the taking by the defendant, without delivery, subjected him to an action of trespass by the intestate; and if Franklin was the mere servant of the intestate, the defendant became a trespasser, by taking the cow, even though Franklin had delivered her to him.

But we do not understand that the foregoing distinctions, found in Bacon, were originally made with any reference to the forms of action. In the year books, the words " trespass " and " writ of trespass " are frequently, if not generally, used in their generic sense, including all torts or injuries, whether by violence or otherwise, and the action of trespass upon the case, as well as trespass *vi et armis.* And we suppose the doctrine, cited from Brooke by Bacon, to be merely this; viz., that one, who has only a special property in goods, can transfer the general property, as against the general owner, by a sale or gift accompanied by delivery; so that the gen-eral owner cannot reclaim them, nor maintain an action against the vendee or donee, as a wrong-doer in taking them. But that a sale or gift of goods, without delivery, by him who has only a special property therein, does not transfer the general property; so that, if the vendee or donee takes them, he is liable, as a wrong-doer, to the general owner. Thus the matter was understood by serjeant Williams. In his notes to *Wilbraham* v. *Snow,* 2 Saund. 47, he cites Bro. Ab. Trespass, 216, 295, to the following position : " *It is said,* that if the bailee, or other person who has only a special property, sells and *delivers* the goods to another, as his own, *bona fide* and without notice, the general owner cannot main-tain *trover or any other action* against the vendee, because by such a sale by a person who has a special property in, and possession in fact of, the goods, the property of the general owner is altered." And more than a hundred years before these notes to Saunders's Reports were published, the doc-trine was thus stated in Sheppard's Epitome, 1032, 1033: " If I be a taverner, mercer or draper, and my servant, using to sell my goods, give away my goods, *it is said* I may not

have this action " (trespass), "*nor any other*, against the taker, but must take my remedy against my servant. Bro. Ab. Trespass, 295. *Sed quære."* It is to be noticed, that both Sheppard and serjeant Williams refer to a *dictum*, and not to an adjudication, to be found in Brooke, and that Sheppard adds a doubt as to the correctness of the *dictum.* This doubt was well founded. No adjudged case, it is believed, is to be found ·in the English books, which sustains the doctrine cited by Brooke and others from the year books. And it is now the settled law of England, that the subject of sale must belong to the vendor, and that he can sell no more than the interest which he lawfully has. In the last edition of Saunders, to which additional notes are made by Patteson and E. V. Williams, (now judges in England,) the following passage is subjoined to the note above quoted from serjeant Williams : " However, in modern cases, it has been held, that if a bailee of goods for a particular purpose transfers them to another in contravention of that purpose, the general owner may maintain trover against that person, even although he be a *bona fide* vendee, unless in market overt." The same doctrine is also laid down in Long on Sales, (Rand's ed.) 167 ; Hilliard on Sales, 23 ; 2 Kent Com. (6th ed.) 324 ; *Cooper* v. *Willomatt*, 1 Man. Grang. & Scott, 672 ; *Roland* v. *Gundy*, 5 Hammond, 202 ; *Metcalfe* v. *Lumsden*, 1 Car. & Kirw. 309. The law of this commonwealth is like the law of England, on this subject, except as to sales in market overt. Indeed, the defendant's counsel does not deny that such is our law, and does not contend that the defendant acquired any valid title to the cow by virtue of the mortgage from Franklin. But he insists that the plaintiff cannot main-- tain this action of trespass, but should have brought an action of trover. The question then is, whether the plaintiff could maintain trover in this instance, without first demanding a return of the cow. If he could, then he may· maintain trespass ; for whenever the taking of goods is wrongful, the taking is a conversion, and trespass, replevin, and trover without a demand, are concurrent remedies for the owner,

46 *

if he has the right of immediate possession.   Wilkinson on Replevin, 2 ; 7 Johns. 143 ; 1 Chit. Pl. (6th Amer. ed.) 176 ; 2 Saund. 47 k, note.   Any cases, therefore, in which trover or replevin, without a demand, has been supported, for a taking of goods, are authorities for the maintenance of trespass in the present case.

The following cases of trover are in point.   In *Hurst* v. *Gwennap*, 2 Stark. R. 306, the assignees of a bankrupt sustained an action of trover, without a previous demand, for goods sold to the defendant by the bankrupt, after a secret act of bankruptcy, of which the defendant had no knowledge. Lord Ellenborough said, " the very act of taking the goods from one, who had no right to dispose of them, was in itself a conversion." And this was confirmed by the whole court of king's bench.   S. P.   *Soames* v. *Watts*, 1 Car. & P. 400 ; *Yates* v. *Carnsew*, 3 Car. & P. 101 ; 2 Selw. N. P. (11th ed.) 1370, 1371.   In *Hyde* v. *Noble*, 13 N. Hamp. 494, it was decided that the taking of chattels, claiming them under a sale by one who had no power to sell, was a conversion, and rendered the buyer liable to the owner, in an action of trover, without a previous demand.   And in *Hoffman* v. *Carow*, 20 Wend. 21, and 22 Wend. 285, an auctioneer, to whom stolen goods were forwarded by the thief, for sale, and who sold them, and paid the proceeds to the thief, without notice of the theft, was held liable to the owner, in trover, without demand and refusal.   See also *Bloxam* v. *Hubbard*, 5 East, 407.

The following cases of replevin are equally in point.   In *Parsons* v. *Webb*, 8 Greenl. 38, A delivered his horse to B, to be sold for A's benefit.   B sold the horse to C, his creditor, in payment of his debt, and C sold the horse to D.   It was decided that A might maintain an action of replevin against D, without first demanding the horse.   So in *Galvin* v. *Bacon*, 2 Fairf. 28, where A, the bailee of a horse, sold him to B, and B sold him to C, neither B nor C having any notice that the horse was not the property of A, the bailor maintained an action of replevin against C, without a previous demand.

Stanley, Administrator, *v.* Gaylord.

In all these cases, in which trover or replevin was held to be well brought, trespass might have been sustained, according to the well established law of actions. The taking, which is in itself a conversion, is such a wrongful taking as is the ground of an action of trespass. A sale of goods, which is in itself a conversion, and will support an action of trover, is also a trespass, for which an action of trespass *vi et armis* well lies.

The defendant's counsel cited 3 Steph. N. P. 2695, to this position : " Where the taking is lawful or excusable, trespass cannot, in general, be supported ; but the action should be trover." All the cases which Stephens refers to, in support of this position, are actions, by the assignees of a bankrupt, against officers, for taking the bankrupt's goods in execution, after a secret act of bankruptcy, and before commission issued, or before assignment made. In such cases, it is held that trespass will not lie for the taking, but that trover, without a demand, will lie for the conversion of the goods by the sale of them, whether the sale be before or after commission issued or assignment made. Such is the result of the various decisions. See *Cooper* v. *Chitty*, 1 Kenyon, 395 ; 1 Bur. 20 ; 1 W. Bl. 65 ; *Smith* v. *Milles*, 1 T. R. 475 ; *Wyatt* v. *Blades*, 3 Campb. 396 ; *Carlisle* v. *Garland*, 7 Bing. 298, and 10 Bing. 452 ; *Potter* v. *Starkie*, 4 Scott, 718 ; *Lazarus* v. *Waithman*, 5 Moore, 313 ; *Price* v. *Helyar*, 4 Bing. 597 ; *Dillon* v. *Langley*, 2 Barn. & Adolph. 131. This doctrine is anomalous ; but the anomaly seems to be well established in the English law.

The court of exchequer, while lord Lyndhurst was at its head, decided that trover would not lie against an officer for taking and selling goods of a bankrupt, on a *fieri facias*, after a secret act of bankruptcy, and before that act was known. *Balme* v. *Hutton*, 2 Tyrw. 17, and 2 Crompt. & Jerv. 19. But this decision was reversed in the exchequer chamber ; 2 Tyrw. 620 ; 1 Crompt. & Mees. 262 ; 3 Moore & Scott, 1 ; 9 Bing. 471 ; and the doctrine of the exchequer chamber was affirmed by the house of lords, in the case of *Garland* v. *Carlisle*, 11 Bligh N. R. 421, and 4 Scott, 587. If trover wil'

lie in such a case, without a demand, we do not readily perceive why trespass should not also lie.   Trover can be maintained only on the ground that the defendant is a wrong-doer, is guilty of a conversion, which is an act as unlawful as any act for which trespass will lie.   It is sometimes said that trespass cannot be maintained, in such a case, because an officer shall not be made a trespasser by relation.   But if trover will lie, when the officer sells before commission issued or assignment made, it is because he is a wrong-doer by relation.   It has also been said that trespass will not lie, because the assignees, at the time when the goods were taken or sold, had neither · the actual nor constructive possession of them.   And in *Smith* v. *Milles*, before cited, Ashhurst, J., said, he knew of no instance " where a man, who has a new right given him, which, from reasons of policy, is so far made to relate back as to avoid mesne incumbrances, shall be taken to have such a possession as to bring trespass for an act done before such right was given to him."   But it has since been decided, that an administrator may maintain trespass for the taking and carrying away of goods after the death of his intestate, and before the grant of administration.   *Tharpe* v. *Stallwood*, 6 Scott N. R. 715, and 5 Man. & Grang. 760.   So he may maintain ejectment, and lay the demise on a day after the intestate's death, but before administration granted.   2 Steph. N. P. 1418.   See also *Foster* v. *Bates*, 12 Mees. & Welsb. 226. We therefore do not regard the case of *Cooper* v. *Chitty*, and the decisions that followed it, as decisive of the question raised in the present case, in which the plaintiff's intestate had the right to immediate possession of the cow at the time when the defendant took her.

It may be here remarked, that the English law has recently been altered by *St.* 2 and 3 Vict. *c.* 29, which enacts that all executions against the property of any bankrupt, *bona fide* executed or levied before the date and issuing of the fiat, shall be deemed to be valid, notwithstanding a prior act of bankruptcy committed by the bankrupt, provided the persons, at whose suit the execution shall have issued, had not, at the

time of executing or levying such execution, notice of any prior act of bankruptcy by him committed. See *Skey* v. *Carter*, 11 Mees. & Welsb. 571.

In Com. Dig. Trespass, D, cited by the defendant's counsel, it is said that trespass will not lie "for goods which a man has lawfully, though the possession of him from whom he had them was wrongful; as if A takes the horse of another and sells him to B, trespass does not lie against B." The same position is found in Hammond's Nisi Prius, 224, where it is stated as a *dictum*, and not as an adjudication; and in 5 Dane Ab. 582, where it is said that if B buys *bona fide*, he is not liable to an action of trespass. The source of this supposed doctrine is 2 Rol. Ab. 556, where the case of *Day* v. *Austin & Bisbitch* is referred to. This case is reported in Owen, 70, and Cro. Eliz. 374; and it does not appear, from either of the reports, that any such point was adjudged. According to Owen's report, the court *said*, "If a stranger takes my horse and sells him, a trespass will not lie against the vendee, but a detinue." Mr. Justice Cowen, in *Barrett* v. *Warren*, 3 Hill, 348, delivered an instructive opinion on this point, and very thoroughly examined all the English authorities. "The result is," he said, "that no English *adjudication* creates an exception in favor of one who purchases from the tortious taker of another's property."

The case of *Marshall* v. *Davis*, 1 Wend. 109, which was cited for the defendant, is a direct decision against the maintenance of the present action. It was there held, upon the authority of the passages in Bacon, already referred to, and in the acknowledged absence of any previously adjudged case in point, that replevin could not be maintained by a bailor against one who buys goods of a bailee who has no authority to sell them. The ground of that decision was, (in the language of Savage, C. J.,) that "there was, technically, no taking of the property, to subject the defendant to the action of trespass; he having obtained possession by delivery from a person having a special property therein; of course, replevin is not the proper remedy, but detinue or trover." The same doc·

trine was affirmed in *Barrett* v. *Warren*, 3 Hill. 348, and recognized in *Pierce* v. *Van Dyke*, 6 Hill, 613. And in *Nash* v. *Mosher*, 19 Wend. 431, it was decided, on the same grounds, that trespass could not be maintained in a similar case. But, as these decisions were made upon a view, which we cannot adopt, of the meaning and effect of the passages cited from Bacon, and are contrary to numerous adjudications which we have already referred to, we cannot yield our assent to them. It was said by Cowen, J., in *Barrett* v. *Warren*, that " an exception in favor of the taker, where he is a *bona fide* purchaser from the wrong-doer, has found its way into the books, and that, however discordant it be with established principles, it may, at least in this state [New York], have become too inveterate to be displaced." We are not embarrassed by any decisions in this commonwealth, which are discordant with established principles; and therefore we deem ourselves not only warranted, but bound, to decide this case according to those principles, which we find well stated by Weston, J., in *Galvin* v. *Bacon*, 2 Fairf. 30, 31, as follows : " Whoever takes the property of another, without his assent, express or implied, or without the assent of some one authorized to act in his behalf, takes it, in the eye of the law, tortiously. His possession is not lawful against the true owner. That is unlawful, which is not justified or warranted by law ; and of this character may be some acts, which are not attended with any moral turpitude. A party honestly and fairly, and for a valuable consideration, buys goods of one who had stolen them. He acquires no rights under his purchase. The guilty party had no rightful possession against the true owner, and he could convey none to another. The purchaser is not liable to be charged criminally, because innocent of any intentional wrong ; but the owner may avail himself, against him, of all civil remedies provided by law for the protection of property. If the bailee of property for a special purpose sells it without right, the purchaser does not thereby acquire a lawful title or possession. In the case before us, the defendant came honestly by the horse, but he did not receive

possession of him from any one authorized to give it, and is therefore liable *civiliter* to the true owner for the taking, as well as for the detention." It may be added, that it is a familiar rule, that a wrongful intention need not be proved, in order to render an act a trespass. Probably one half of the cases, in which trespass *de bonis asportatis* is maintained, arise from a mere misapprehension of legal rights.

Upon a considerate view of the principles on which the present action rests, and of the application of those principles in the recent adjudications, in England and in this country, a majority of the court are well satisfied, notwithstanding the decisions in New York, that the plaintiff has not mistaken his remedy.

WILDE, J. I agree in opinion with my learned brethren, that no valid title to the cow in question passed to the defendant, by the deed of mortgage from Franklin to him, although he believed, and had good reason to believe, that Franklin was the true owner. I agree also, that the doctrine cited from the year book, 21 H. 7, 39, cannot be maintained. It is there laid down, that if a bailee of goods gives or sells the goods to a stranger, and makes delivery of them, the owner cannot have a writ of trespass; meaning, as I understand the doctrine, that by such a sale and delivery the property was changed and thereby vested in the stranger. It is also laid down in the same case, that if the goods were sold without delivery, and the stranger takes them away, he is a trespasser; for by the sale the property was not changed, but by the taking. I think this doctrine also cannot be maintained. For the sale is good, as between the parties, without a delivery. And the sale, with or without a delivery, could not divest the owner's title. If the property be taken wrongfully, by a stranger, from the bailee, and he is sued by the bailee, and full damages are recovered against him, that may bar the owner's right of action, as the trespasser should not be twice charged. I think, therefore, that this case is not to be decided by the distinction laid down in the case cited from the year book.

I agree also with my learned brethren, that if the taking by the defendant were tortious, the plaintiff might well maintain either trespass or trover or replevin in the *cepit ;* but I cannot agree that in all the cases, in which trover may be maintained without a demand, trespass or replevin may also be maintained.   To maintain these actions, the taking must be unlawful.   In this commonwealth, replevin will lie for an unlawful detention.   And trover also will lie where the taking is lawful, and the taker afterwards converts the property to his own use.   No demand is necessary, if the conversion is proved *aliunde.*   For instance ; trover might be well maintained against Franklin, upon the facts reported in this case ; but not trespass ; for he had the lawful possession, and by his mortgage to the defendant he converted the property to his own use.   In such case, no demand of the property would be necessary.   So, if a man finds property, he may lawfully take it, and take care of it ; but if he afterwards sells it without authority, that, *ipso facto,* will be a conversion, and trover would be the appropriate action.   And there is no reason, as it seems to me, why the owner should be allowed to maintain trespass also ; and no such action ever has been maintained, where the taking was lawful.

This case, therefore, depends upon the question, whether one who in good faith obtains possession of goods or chattels from a party in possession, under a sale from him, is liable to an action of trespass by the true owner.   On this question numerous decisions and authorities have been cited.   On the part of the plaintiff, several cases have been cited, according to which the taking under a *bona fide* purchase from a bailee or a person in the lawful possession of goods, but who has not a right to sell or dispose of them, is an unlawful act and a trespass against the true owner.   On the other hand, many contradictory decisions and authorities have been cited by the defendant's counsel, which appear to me to be founded on a more just and reasonable principle.   I think the weight of authority is most decidedly opposed to the maintenance of an action of trespass in a case like this.   I think it clear that in

England no such action can be maintained.  This appears by the rule of law laid down as to the distinction between the actions of trespass and trover, in *Cooper* v. *Chitty,* 1 Bur. 20, and in numerous cases there cited ; and in *Balme* v. *Hutton,* 9 Bing. 471 ; in *Wilson* v. *Barker,* 4 Barn. & Adolph. 614 ; in *Nixon* v. *Jenkins,* 2 H. B. 135, and in many other cases.

In *Cooper* v. *Chitty,* lord Mansfield lays down the distinction between the two actions with great clearness.  That was an action of trover against the sheriff for seizing the goods of a bankrupt after a secret act of bankruptcy and before the issuing of the commission.  The goods were afterwards sold by the sheriff ; and it was held that this was a conversion, for which trover would lie, but not trespass ; the taking being lawful or excusable.  " The fallacy of the argument from the authority of certain cases turns," said lord Mansfield, " upon using the word lawful equivocally in two senses.  To support the act, it is not lawful ; but to excuse the mistake of the sheriff, through unavoidable ignorance, it is lawful.  Or in other words, the relation introduced by the statutes binds the property ; but men, who act innocently at the time, are not made criminal by relation ; and therefore they are excusable from being punishable by action or indictment, as trespassers.  What they did was innocent, and in that sense lawful."  The same distinction is made in *Smith* v. *Milles,* 1 T. R. 480.  And Ashhurst, J., adds, that " the plaintiffs are not injured, as it is competent to them to recover the value of the goods, by bringing a proper action, namely, an action of trover.  But the officer shall not be harassed by this species of action, in which the jury might give vindictive damages."

In *Balme* v. *Hutton,* it was held, in the court of exchequer, that an officer, in a like case, was not liable in any form of action ; but that much disputed point is not material in the present case.  That was an action of trover, and the distinction between trespass and trover was not discussed.  In the court of exchequer, a writ of error was brought, and it was held that the defendant was liable in trover for the conversion of the property, but not for the taking, either by an officer or any

other person. And it seems to me impossible to hold otherwise upon principle. The taking was lawful ; for no one but the bankrupt had the possession or the right of possession at the time, and unless a commission had been issued within a limited time, the assignee would have acquired no right to the property.

It is clear, Park, J., says, that the sheriff has not been held to be a trespasser in such a case as that ; and no judge in any other case has so considered him. Tindal, C. J., says that the distinction laid down by lord Mansfield was a sensible and rational distinction ; and as the sheriff acted innocently in the taking, he should not be liable in that form of action, in which the jury may give damages for the taking, distinct from the value. And Patteson, J., made a similar remark. On this point, the law seems to be clear. The main question in that case was, whether the sheriff was liable in any form of action. But as to the form of the action, it was held that trover was the appropriate action, and it was immaterial whether the taking was by the sheriff or any other person. The case of *Wilson* v. *Barker*, 4 Barn. & Adolph. 614, is a very strong case on this point. It was held in that case, that a man who knowingly receives from another a chattel, which the latter had wrongfully seized, and afterwards refuses to give it back to the owner, on demand, does not thereby become a trespasser, unless the chattel was seized for his use. The same distinction is well established in New York. In *Barrett* v. *Warren*, 3 Hill, 348, it was held, that though goods have been tortiously taken, a *bona fide* purchaser from the wrong-doer is not answerable to the owner in trespass, but only in trover, or replevin in the *detinet*, after demand. A man, it is said, and very justly I think, who innocently purchases property, supposing he should acquire a good title, ought not to be subjected to an action, until he has had an opportunity to restore the goods to the true owner. The case of *Hoffman* v. *Carow*, 20 Wend. 21, and 22 Wend. 285, is not in point. It was in that case held that an auctioneer, to whom stolen goods were forwarded by the thief, for sale, and

who sold them, and paid the proceeds to the thief, without notice of the theft, was liable to the owner in trover, without demand, &c. This, though a hard case for the auctioneer, was, I have no doubt, rightly decided. No demand was necessary, for the sale was a conversion.

In Maine and New Hampshire, it has been held that tres-pass would lie in a case like this. But the cases do not appear to have been decided upon a full examination of the authorities. The ancient authorities are not referred to, and the cases were certainly imperfectly argued by counsel. I have great respect for the opinions of the learned judges of those courts, but I cannot concur in their decisions in the cases referred to.

The case of *Galvin* v. *Bacon*, 2 Fairf. 28, was decided on a rule laid down by Weston, J., which, in my judgment, requires qualifications. It is said that whoever takes the property of another, without his assent, express or implied, or without the assent of some one authorized to act in his behalf, takes it, in the eye of the law, tortiously. The rule laid down by lord Mansfield, in *Cooper* v. *Chitty*, and approved by so many learned judges in England, and in New York, appears to me more accurate and just. A man who finds lost goods, and takes them to preserve them for the true owner, is certainly no trespasser, and if afterwards he converts them to his own use, the owner not appearing to claim them, he is not liable in trespass. So the innocent purchaser of goods from a person to whom the owner has intrusted them is excusable. In ancient times it was held by some, that where a bailee sold goods, the owner could not retain them. That is not so ; but it is law now, that if the goods are taken from the bailee, and he sues the trespasser and recovers full damages, that will bar the owner's right of action.

It seems to me, therefore, considering these and other modern decisions, that the weight of authority is decidedly opposed to the maintenance of an action of trespass in a case like this. But were it otherwise, we must fall back upon the ancient authorities, if the law has not been already settled in

this commonwealth. And those authorities are all in favor of the defendant. The doctrine is so laid down in 2 Rol Ab. 556; in Com. Dig. Trespass, D.; in Bac. Ab. Trespass, E.; and in recent decisions in England already referred to, as to the distinction between the actions of trespass and trover. See also *Storm* v. *Livingston,* 6 Johns. 44; *Bradley* v. *Davis,* 2 Shepley, 44; *Brown* v. *Campsall,* 6 Har. & Johns. 491. The principle established by the ancient authorities is most just and reasonable. If a party trusts his goods to an unfaithful bailee or keeper, who sells them, without authority, to a *bona fide* purchaser, the least the owner should be bound to do is to give him notice, so that he may have an opportunity to restore them; unless he should have sold the goods to another, thereby rendering a demand of the goods useless. And so has always been the law, as I think, in this common-wealth; and if this does not appear clearly by our reports, it must be because the law has been considered by the profession as clearly settled. I have always so considered it, certainly. I well remember to have had occasion to consider the ques-tion, and to examine the authorities, more than fifty years ago. A farmer had let his farm, and by the contract the tenant was to have the use of a yoke of oxen belonging to the lessor. The tenant sold the oxen to a *bona fide* pur-chaser, and received payment; and I was applied to to bring an action against the purchaser. I was satisfied that an action of trespass could not be maintained, and advised my client to make a demand of the oxen; after which I commenced an action of trover, which was defended on the ground that the sale to the defendant was valid; the tenant having a special property in the oxen. But the action was sustained, notwith-standing some of the authorities cited in this case.

On looking into 1 Bur. 20, since this case was argued, I found a memorandum made by me in the margin of the report of the case of *Cooper* v. *Chitty,* that trover, not trespass, would lie in that case; and a reference is made to *Smith* v. *Milles,* 1 T. R. 475. There are no marginal notes in my edition of Burrow, and I have little doubt that that memoran-

dum was made when I examined the authorities in the case above stated. This, however, is immaterial. But we have better authorities in support of the law of Massachusetts. In 5 Dane Ab. 582, it is laid down as settled law, that trespass would not lie for lost goods taken up to preserve them for the owner ; nor for goods which a man has lawfully received from a party in possession. Mr. Dane had a very extensive knowledge of the decisions of our courts, before the regular reports commenced, and is the best authority we have as to the previous decisions of the courts, and the understanding of the state of the law by the profession. If there had been any decision contravening the ancient English authorities, especially after the distinction between the actions of trespass and trover had been so clearly stated by lord Mansfield, nearly a century ago, it would have been preserved by Mr. Dane.

Cowen, J., in his dissenting opinion in *Barrett* v. *Warren*, cites the case of *Higginson* v. *York*, 5 Mass. 341, in support of his opinion ; but it is quite clear, that the question as to the form of the action was not and could not be raised in that case, which was an action of trespass *quare clausum*, and for taking away three hundred cords of the plaintiff's wood. Both the defendants entered, and took away the wood, and trespass was the proper remedy. One of the defendants purchased the wood from the trespasser who cut it down ; and the court say, that he acquired no title thereby; meaning, doubtless, no valid title. . It is therefore clear, that nothing appears to show that in this commonwealth an action of trespass has ever been maintained, or has even been attempted to be maintained, in a case like this. On the contrary, it has been determined in a case of trespass on real estate, depending on the same principle as trespass for taking personal property, that the action could not be maintained against the feoffee or lessee of a disseizor. The law laid down in Bro. Ab. Trespass, 35, and by lord Coke and sundry other authorities, is, (although there are some cases to the contrary,) that if a disseizor makes a lease or feoffment, and the disseizee afterwards enters, he cannot maintain trespass against the feoffee or lessee, because

47 *

the feoffee or lessee came in by title.   This question came up in the case of *Emerson* v. *Thompson*, 2 Pick. 473, which was an action of trespass for mesne profits against the heirs of the disseizor after recovering possession against the heirs, in a writ of entry.   And the court were all of opinion, that the defendants were not liable for any profits received after their entry and before the commencement of the writ of entry. But a majority of the court were of opinion, that after the commencement of the writ of entry, the withholding of the possession by the heirs was wrongful, and unless the plaintiff could recover in that form of action he could have no other remedy.   That case depends on the same principle as an action against the *bona fide* purchaser of personal property from the party having possession, but having no right to sell the same as against the true owner ; with this difference, that in the latter case the owner has a clear and adequate remedy in an action of trover.   Upon a careful consideration of these and other authorities, and upon principle, I am of opinion that the defendant is not liable in this form of action ; nor would he be liable in an action of trover, for he has not been guilty of a conversion of the property.   The conversion was by Franklin, against whom an action of trover might be well maintained ; and if he is not able to respond in damages, the loss ought to be borne by the plaintiff who confided the property to his custody, rather than by the defendant who has been guilty of no wrong.   But no loss need be sustained by the plaintiff, for after a demand of the defendant and his refusal to restore the property, an action of replevin in the *detinet* would well lie.   For these reasons, notwithstanding my great respect for my learned brothers, I am unable to concur with them in overruling these exceptions.

*Exceptions overruled*