JOHN W. JOHNSON *v.* WILLIAM S. WILLEY.

Replevin lies to recover personal property sold by a bailee without authority, and the bailor is entitled to recover the value of such property of the purchaser, although buying in good faith and without notice.

The bailor, being the owner of the property, cannot be divested of it save by his own consent, unless the conduct of such owner has been such as to justify a court or jury to pronounce his title fraudulent and void as to third persons. The mere return of the property to the possession of the seller to be kept on hire, does not, of itself, in law, make the sale void, as to a subsequent purchaser. If the jury had found that it was done with the fraudulent or colorable purpose that the seller might hold himself out as owner, or that there was a secret trust, it might have been otherwise; but, as no actual fraud was found or suggested, the right of the plaintiff must be adjudged good, as against a purchaser.

REPLEVIN for two heifers. The writ was dated December 24, 1862. Only one of the heifers was taken on the writ. The defendant pleaded property in himself.

On trial it appeared, that, on the 23d of April, 1859, the plaintiff leased his farm in Portsmouth to Charles Adams, for five years, reserving one field and the house in which the plaintiff lived. By the lease the plaintiff agreed to furnish, to be used by Adams, stock or cattle, to the value of $150., for which Adams was to pay to him interest annually, which he furnished accordingly. Adams had also some cattle of his own on the farm, and bought and sold cattle occasionally.

In 1850 Adams bought the heifer replevied, then a calf, of one Clow, and raised her on the farm. In May, 1862, Adams, being in arrears for rent, gave the plaintiff a note for $62.20. On the 11th of June, 1862, the plaintiff demanded payment of the note, and Adams sold to the plaintiff the heifer replevied for $12., and the amount was endorsed on the note in part payment. The heifer was then taken by the plaintiff to the part of the farm reserved to him and kept there a few days. Finding it inconvenient to keep the heifer there he made a bargain with Adams, that he should pasture the heifer in the pasture where she had been kept before, for the rest of the season, where she was kept with the herd as she had been before the sale.

The other heifer named in the writ came from a cow Adams had bought, and was in the year 1861 turned over by him to the plaintiff to

make good the stock the plaintiff had let to Adams, part of which Adams had disposed of.

In September, 1862 Adams sold both the heifers to the defendant for $26. The heifers, by an arrangement with the defendant made with Adams, remained some time after this in the pasture, and were taken away one at a time, as suited the convenience of the defendant. Soon after the last heifer was taken away by the defendant, Adams left the country.

Before the date of the writ the plaintiff demanded the heifers of the defendant; the heifer which he first took from the pasture, and which he had been fattening, was slaughtered by the defendant, and for this reason it was not replevied.

Upon being inquired of, neither party desired to go to the jury to show the fact that the other party had been guilty of any actual fraud in the sale of the heifer replevied.

The parties agree that the questions arising upon these facts shall be reserved for the consideration of the whole court. If in the opinion of the court the defendant is entitled to recover, he is to have judgment for fifteen dollars, the value of the heifer replevied, with interest from the date of the writ; otherwise the plaintiff is to have judgment for nominal damages.

The questions arising on the foregoing case are reserved for the consideration of the whole court.

Upon the different points suggested by the case, *Hatch,* for the plaintiff, cited Long on Sales, 74 & 67; *Twyne's Case,* 1 Smith's Leading Cases 1, and notes 45, 49; *Coburn* v. *Pickering,* 3 N. H. 415.

If the possession of Adams was evidence of fraud, it is fully explained and rebutted by the facts stated in the case. *Haven* v. *Low,* 2 N. H. 16, 17, 18; *Ash* v. *Savage,* 5 N. H. 545: *Hoit* v. *Remick,* 11 N. H. 287; *Barker* v. *Hall & Tr.,* 13 N. H. 302; *Kendall* v. *Fitts,* 22 N. H. 1; *Shaw* v. *Thompson,* 43 N. H. 133; *McFarland* v. *Farmer,* 42 N. H. 386; *Kimball* v. *Jackman,* 42 N. H. 242; *Beals* v. *Guernsey,* 8 Johns. 446.

*Hackett & Goodall,* for defendant, contended that Adams was permitted by plaintiff so to manage his animals as to defraud the defendant, and that here there was a fraud in law; and cited *Ludlow* v. *Hurd,* 19 Johns. 218; 1 Parsons on Contracts 442 note; *Shaw* v. *Thompson,* 43 N. H. 132; *Drew* v. *Kimball,* 43 N. H. 282.

NESMITH, J. The sale of the heifer in suit, being shown to have been made by Adams to the plaintiff upon a good consideration paid by the plaintiff, therefore binds the parties to that contract. This sale was fortified by a delivery to the plaintiff of the animal in question, and third persons will be bound, unless the purchaser may have conducted in such a manner, by permitting her afterwards to return into the possession of the original owner, and to be so managed by him as to forfeit his claim to her. So far as the sale is concerned, it is not pretended but that the plaintiff had the right to such security for his debt against

Adams, and that Adams was at full liberty to sell to the plaintiff at a fair price any property he had. We hear no complaint of the price paid for this animal, and its value appears to have been endorsed on the note held by the plaintiff against Adams.

After the animal had remained in the plaintiff's possession, or upon his own land, for some days, was it wrong or unnatural for the plaintiff, as the landlord, to contract with his tenant to pasture the heifer for him during the season of pasturing? We see no ground to presume that such a contract as is here shown can be regarded as uncommon, or as made with a fraudulent intent to injure others. There is no evidence here, that Adams had any authority, either express or implied, to sell or dispose of any of plaintiff's property, or that he had any knowledge of such conduct on the part of Adams, until after the sale was effected. The relation of landlord and tenant existing here was such as should have put the defendant and all third persons, who might desire to trade with Adams, upon inquiry as to the ownership of the property found upon the landlord's lands. For it by no means follows, as a general and legitimate conclusion, that all the stock found in the possession of tenants can be rightfully disposed of by them, and the price paid over to them without reference to the landlord's rights.

We see no sufficient evidence here, that the defendant has exercised ordinary care and diligence in making previous inquiry before purchasing the property in dispute. Chancellor Kent prescribes the true line of duty for the defendant in such cases, 2 Com. 485. He there remarks, that the common law affords to every one reasonable protection against fraud in dealing, but it does not go to the length of giving indemnity against the consequences of indolence, or a careless indifference to the ordinary and accessible means of information. The law requires the purchaser to apply his attention to those particulars which may be supposed within the reach of his observation and judgment. If the purchaser be wanting in attention, where attention would have been sufficient to protect him from *surprise* or *imposition*, the maxim *caveat emptor* ought to apply. Even against this maxim, he may provide by requiring the owner to warrant the title to that which the law would not imply to be warranted, and if the vendor be wanting in good faith, *fides servanda* is a rule equally at law and in equity. 1 Fonblanque Equity, 371.

The observance of the aforesaid judicious rules of conduct, so clearly enforced, would probably have saved the defendant from the consequences of the fraudulent contract of Adams in selling to him the property claimed by the plaintiff. But, if actual fraud existed on the part of the plaintiff with reference to the property claimed here, the defendant might very properly have availed himself of the judgment of the jury, whose legitimate duty in the premises would have been, under suitable instructions of the court, to have settled this point. But the defendant having waived this privilege, we feel at liberty to apply such law to the contract and conduct of the parties as we deem pertinent to the same. And we confess that, under due consideration of the circumstances of the case, we see no reason why we should impute fraud to the plaintiff,

in his arrangements with Adams, or why the implication of fraud in law should be raised against him in reference to the rights of third persons or purchasers under Adams. It appears to us, that the plaintiff properly stands as bailor, and Adams as the bailee, he having received the heifer into his possession, to keep for hire, or where the law will presume a suitable price to be paid as a reward for the keeping.

As bailee, Adams would be responsible for want of good faith, reasonable care, and ordinary diligence. 2 Kent Com. 591; Story on Bailments, secs. 276, 278 & 279. The bailor is regarded as the general owner, and the bailee has only a limited or qualified right of possession, and mere possession of personal chattels, without some other evidence of property or of authority from the real owner to sell, will not enable the possessor to transfer to a purchaser a better title than he himself has. *Covill* v. *Hill*, 4 Denio 323. The owner of property cannot be divested of it save by his own consent or the operation of law. *Williams* v. *Merle*, 11 Wend. 81.

If the bailee sell the property without authority, a purchaser, although buying in good faith, and without notice, acquires no title, and the owner may recover his property or its value from any one in possession. 1 Parsons on Contracts, 578; *Sanborn* v. *Colman*, 6 N. H. 14; *Lovejoy* v. *Jones*, 30 N. H. 162; *Sargent* v. *Gile*, 8 N. H. 325; *Galvin* v. *Bacon*, 2 Fairfield, 30; *Nash* v. *Mosher*, 19 Wend. 431; *Neff* v. *Thompson*, 8 Barb. 213.

We cannot, as before suggested, declare that the return of the heifer into the possession of the former owner for the purpose of being pastured during the season of pasturage, does, in law, render the original sale to the plaintiff fraudulent or void. If the jury had found that such arrangement was made with any fraudulent or colorable intent, or that the sale was attended with a secret trust, then the inference would be otherwise and the result different. But, in the absence of actual fraud, our judgment is, that the plaintiff, upon the aforesaid facts and grounds of reasoning, is entitled to judgment for nominal damages and his costs.