UTICA,
Aug. 1828.

Marshall
v.
Davis.

---

## MARSHALL *vs.* DAVIS.

ERROR from the Sullivan common pleas. Davis brought an action of *replevin* against Marshall for the taking and detaining of a horse. The defendant plead *non cepit* and property in himself. The cause was tried at the Sullivan common pleas in June, 1827. The plaintiff proved, that shortly after April, 1826, he purchased a pair of horses of one Gumaer, and delivered the horse in question in this cause, together with the other horse, to one Peter Vermilyea, to use for their keeping, reserving to himself the right to take them away whenever he thought proper; that Vermilyea exchanged the horse in question with the defendant. It was admitted, that the use of the horse from the time of the exchange to the time he was delivered on the plaint in replevin, was

*Replevin* will not lie for an illegal detention of property, where the party comes to the possession by *delivery* from a person having the special property. It will lie in all cases where trespass *de bonis asportatis* can be maintained. The taking of property from a *bailee* who has no authority to dispose of it, is unlawful as against the general owner, though the person receiving the property is ignorant of the rights of the owner, and innocent of any fraudulent intent. *Trespass*, however, cannot be maintained in such case, because the general property in the goods is changed by the delivery, and there is no such a *taking* as will subject the party to an action of trespass. The remedy is by action of detinue or trover; and if trespass will not lie, *replevin* cannot be maintained. The wife of a vendor of a chattel is a competent witness in an action by a third person against the vendee, where the interest of the vendor is neutralized.

worth five dollars. After the replevy, the defendant became re-possessed of the horse he had given Vermilyea in exchange for the one replevied. Previous to the commencement of the suit, the plaintiff demanded the horse of the defendant, who refused to deliver him up. On this testimony, the defendant moved the court that the plaintiff be nonsuited, which motion was denied, and the defendant excepted. The defendant then offered to prove by the wife of Peter Vermilyea, that the horses were purchased by Vermilyea of Gumaer; that the plaintiff was security to Gumaer for the purchase money, and had given permission and authority to her husband to sell or exchange the horses. The plaintiff objected to her competency as a witness, on account of the interest of her husband: the objection was sustained, and the defendant again excepted. The jury found a verdict for the plaintiff. A writ of error was brought to this court, and the cause was submitted at the last term on written arguments.

*A. C. Niven*, for plaintiff in error. The defendant having come into possession of the horse by contract, there was no tortious or unlawful *taking*; consequently replevin was not the proper action. (*Morgan's Vade Mecum*, 70, 72. *Selwyn's Nisi Prius*, 1110. *Gilb. Replev.* 58. *Comyn's Digest, Replevin.*(a) 1 *Chitty's Pl.* 118. 1 *Esp. N. P.* 216. 7 *Johns. R.* 141. 20 *Johns. R.* 467.) The witness offered was competent. The husband's interest in the question was neutralized. The husband might have been sworn as a witness; of course there could be no objection to the wife.

*L. Jenkins*, for defendant. Vermilyea had no interest in the horse, except the privilege of using him whilst the plaintiff thought proper to leave him in his care. He was a tenant at will, in the strictest sense; his interest was in an entire subservience to that of the plaintiff. The plaintiff had a right to reduce the property to immediate possession at any moment; he was, therefore, constructively in possession, and might maintain either trespass or replevin against any person who took the horse. (20 *Johns. R.* 465.) The fact of the defendant obtaining possession by *delivery*, cannot affect the

rights of the plaintiff. Taking the horse, with a knowledge of the circumstances which the jury might infer in this case, was an unlawful taking. The action was maintainable for the unlawful *detention.* (15 *Mass. R.* 359. 16 *Mass. R.* 147. 1 *Chitty's Pl.* 48. 2 *Saund.* 47, *b.* 7 *T. R.* 12.) The court correctly excluded the witness offered. The record of recovery in this case, would be conclusive evidence against the husband of the witness in an action by the defendant, on the implied warranty of title. (1 *Johns. R.* 517. 6 *Johns. R.* 5, *and* 523. 2 *Johns. R.* 394. 1 *Johns. C.* 163. 2 *Johns. C.* 314.)

*By the Court,* SAVAGE, Ch. J. The questions in this case are, 1. Whether, on the plaintiff's own shewing, the action of replevin can be maintained ? and 2. Whether Mrs. Vermilyea was a competent witness ?

1. The old authorities, (says Van Ness, justice, in *Pangburn* v. *Partridge,* 7 *Johns. R.* 143,) are, that replevin lies for goods taken tortiously, or by a trespasser ; and that the party injured may have replevin or trespass at his election. To maintain this position, the year books and several ancient and modern authorities are cited. In *Thompson* v. *Button,* (14 *Johns. R.* 87,) chief justice Thompson says, " The utmost extent to which the case of *Pangburn* v. *Partridge* can be carried, is, to permit replevin to lie where an action of trespass might be brought." *Gardner* v. *Campbell,* (15 *Johns. R.* 402,) was an action of replevin, in which the defendant justified under an execution, and to which the plaintiff pleaded pleas of payment and satisfaction. To these pleas there was a demurrer and joinder. Spencer, justice, in delivering the opinion of the court, says, " The first objection to the pleas is, that they admit the original caption to be lawful, and where that is the case, *replevin* does not lie." In concluding his opinion, he again remarks : " The goods were lawfully taken by the defendant, and *replevin* is not the appropriate remedy." In *Mills* v. *Martin,* (19 *Johns. R.* 31, 2,) Platt, justice, and Spencer, chief justice, repeat the doctrine, that where the taking was tortious, and for which trespass would lie, there *replevin* would also lie. In *Clark* v. *Skinner,* (20

UTICA,
Aug. 1828.

Marshall
v.
Davis.

*Johns. R.* 467,) Mr. Justice Platt reiterates the same doctrine, and applies it to the case of taking not only from the *actual* but *constructive* possession of the plaintiff; and contends that the true rule is, that replevin will lie where trespass will. This is undoubtedly the correct rule, that replevin will lie in all cases where trespass *de bonis asportatis* can be maintained. And in trespass, it is well settled, that the plaintiff must have either actual possession, or property and constructive possession; by which is meant, the right to redeem the article to his possession at pleasure. According to the testimony in this case, the plaintiff was the general owner of the horse in question, and had the constructive possession: he had a right to take actual possession at any moment when it was his pleasure to do so.

The next enquiry is, whether the taking by the defendant was unlawful, or, in the language of the law, *tortious.* Vermilyea was not the servant of the plaintiff. He was bailee; he kept the horses for the plaintiff, and had the use of them to pay for their keeping. He had no authority to sell, or exchange the horses. He, however, had the actual possession; and, for aught appearing in the case, the defendant believed him to be the owner. The defendant took the horse, by delivery of Vermilyea, professing to be the owner, and to have the right of disposing of him. The taking was, in fact, without authority, as Vermilyea had no authority to dispose of the horse, and was therefore unlawful. That the defendant was ignorant of the plaintiff's rights, and therefore innocent of any fraudulent intent, does not alter the rights or liabilities of the parties in relation to each other. Mr. Tidd, in his division of actions, says, replevin lies to recover damages for an immediate wrong, without force, in taking away and detaining cattle or goods; and answers to the action of trepass *de bonis asportatis.* Trespass *vi et armis* lies to recover damages for immediate wrongs, accompanied with force. (1 *Tidd's Pr.* 7.) In the case of *Mearey* v. *Head,* (1 *Mason,* 322,) Mr. Justice Story says, " At common law a writ of replevin never lies unless there has been a *tortious ta-* king, either originally or by construction of law, by some act, which makes the party a trespasser *ab initio.* In case of the

bailment, or rightful possession of the property, replevin is certainly not the proper remedy at common law; but detinue or trover lies in such case, where there is an unjustifiable detention or conversion." He further adds, " *Non cepit* puts in issue the fact of an actual taking; and unless there be a wrongful taking from the possession of another, it is not a taking within the issue." These remarks were made in an action of replevin. The plaintiff was the owner of the goods in question, and had consigned them to one Green for sale. Green deposited them in the store of the defendant for safe keeping. Green failed, and a creditor of his sued the defendant as trustee of Green. The defendant refused to deliver them to the plaintiff on demand, and on suit being brought, pleaded property in Green. The learned judge further remarks, that under the circumstances of that case, if the issue had been *non cepit*, it must have been found for the defendant, for he never took the goods, in any legal sense, from the possession of another. He received them on storage, and the delivery to him was a lawful delivery upon a bailment for safe keeping. *Non cepit* put in issue the fact of an actual taking; and unless there be a wrongful taking from the possession of another, it is not a taking within the issue. A wrongful detainer, after a lawful taking, is not equivalent to a wrongful original taking.

The doctrine of the supreme court of Massachusetts is more liberal in favor of the action. Parsons, chief justice, says, in *Bailey* v. *Stubbs*, (5 *Mass. R.* 284,) as a general principle, the owner of a chattel may take it by replevin from any person whose possession is unlawful, unless it is in the custody of the law, or unless it has been taken by replevin from him, by the party in possession. In *Badger* v. *Phinney*, (15 *Mass. R.* 359,) it was held that replevin lies for goods unlawfully detained, though there was no tortious taking. In that case, the goods replevied were sold by the plaintiff to the defendant's intestate, an infant; and on his refusal to pay, on the ground of infancy, the plaintiff demanded the goods. The defendant refusing to give them up, replevin was brought, and it was held that this action lies, where

the goods are wrongfully detained, though the original taking was lawful. This decision was made in March, 1819, and seems not to have been satisfactory to the bar ; as in September, of the same year, the question was again raised, and argued at length in *Baker* v. *Fales*, (16 *Mass. R.* 147.) But the court adhered to their former decision, and Putnam, justice, in a very able and learned argument, supports the propriety of their former adjudication on the same point. Were the question new in this court, I should be strongly inclined to hold the doctrine of the Massachusetts court correct, particularly under our statute to prevent abuses and delays in actions of replevin, (1 *R. L.* 91,) by which it is enacted, "that if beasts, or goods, or chattels of any person, at any time hereafter, be *taken and wrongfully detained*, the sheriff, by writ of replevin, or, upon complaint without writ, shall cause the same to be replevied," &c. But the question here seems to have been considered purely a common law question, and that as such, replevin is not the appropriate remedy, where the goods were legally taken but illegally withheld, as in the case of *Gardner* v. *Campbell*. The decisions in this court place replevin on the same ground with trespass.

The title of the plaintiff was, no doubt, sufficient to maintain trespass, and it becomes important to inquire, whether the taking by the defendant was such as to subject him to this action. I have not found any adjudged case in point ; but in *Bac. Abr. Trespass, C.* 2, it is laid down as law, if the goods of J. S. which were bailed to J. N. are taken from, or injured in the hands of J. N. by a stranger, J. S. in whom the general property still remains, may maintain an action of trespass. But if the bailee of goods have delivered them to a stranger, the bailor cannot maintain this action, because the general property in the goods is changed, by the delivery of a person who had a special property therein. So in *Vin. Abr. Trespass, M. pl.* 11, if I bail goods to a man who gives or sells them to a stranger, and the stranger takes them *without delivery*, I shall have trespass ; for, by the gift or sale, the property is not changed, but by the taking : but if the bailee delivers them to the stranger, I shall not have trespass. It

seems, therefore, there was technically no *taking* of the property to subject the defendant to the action of trespass, he having obtained possession by delivery, from a person having a special property therein ; of course, replevin is not the proper remedy, but detinue or trover.

2. On the second point I think the court erred also. Vermilyea's interest was neutralized. If the plaintiff recovered, the defendant had his remedy against Vermilyea. If the plaintiff failed in this suit, then he had his action against Vermilyea. So that, let the decision be either way, Vermilyea was responsible for the value of the horse. His wife was a competent witness, as he would have been if offered.

Judgment reversed, *venire de novo* to Sullivan common pleas.