## Case No. 1,932.

### BROOKE v. McCRAKEN.

[10 N. B. R. 461;[1] 7 Chi. Leg. News, 10.]

Circuit Court, District of Oregon.

BANKRUPTCY — PROHIBITED AND FRAUDULENT TRANSFERS — SUIT BY ASSIGNEE — AMENDMENTS OF JUNE 22, 1874.

1. The action given to the assignee by section 35 of the bankrupt act [of 1867; 14 Stat. 534] to recover property, or the value thereof, transferred contrary to such section, is within the jurisdiction conferred upon the circuit court by section 2 of said act prior to the amendment of June 22, 1874 [18 Stat. 178].
[Cited in Shuman v. Fleckenstein, Case No. 12,826.]

2. The amendments of June 22, 1874, to section 35 of the bankrupt act, are not retroactive.
[Cited in Van Dyke v. Tinker, Case No. 16,-849; Bradbury v. Galloway, Id. 1,764; Tinker v. Van Dyke, Id. 14,058; Re Hauck, Id. 6,219.]

3. Quaere, whether the amendment substituting "knowing" for the phrase "reasonable cause to believe," has changed the legal effect of section 35 of the act.
[Cited in Singer v. Sloan, Case No. 12,899.]

4. Semble, that a creditor receiving payment with "cause to believe" his debtor insolvent, is presumed to know that such debtor thereby intended a fraud upon the act.

5. Semble, that on the trial of an action to recover property, or its value, transferred contrary to section 35 of the act. it is necessary to prove a demand and refusal, and if so, the same should be alleged in the complaint.

[In bankruptcy. Action by Lloyd Brooke, assignee of C. B. Comstock & Co., against John McCraken, to recover the value of merchandise alleged to have been transferred to the defendant in violation of section 35 of the act of 1867. Defendant demurs. Demurrer overruled.]

William Strong, for plaintiff.
Cyrus A. Dolph, for defendant.

---

[1] [Reprinted from 10 N. B. R. 461, by permission.]

DEADY, District Judge. This is an action brought by the assignee of C. B. Comstock & Co., to recover of the defendant the sum of eight hundred and seventy-seven dollars and eighty-two cents, the alleged value of one hundred and twenty-five barrels of flour, received by him from the bankrupts, contrary to the bankrupt act. The amended complaint alleges that Comstock & Co. were adjudged bankrupts on January 10, 1874, upon a petition filed December 16, 1873, and that on December 6, 1873, the bankrupts being indebted to the defendant in the sum of one thousand dollars, and insolvent, did, with a view to give a preference to the defendant, deliver to him, as a payment on said indebtedness, one hundred and twenty-five barrels of flour, the property of said bankrupts, at and for the price of six dollars per barrel; and that said defendant then and there had reasonable cause to believe that said Comstock & Co. were insolvent, and that said transfer or payment was made in fraud of the bankrupt act.

The defendant demurs and assigns for causes of demurrer; 1st, that the court has not jurisdiction of the action; and 2d, that the complaint does not state facts sufficient to constitute a cause of action. In support of the first ground of demurrer, it is claimed that this is an action to recover a mere debt, and is therefore only cognizable in the district court, according to the ruling in Bachman v. Packard [Case No. 709], in which it was held, in the language of the syllabus, that: "The concurrent jurisdiction conferred upon the circuit court by section 2 of the bankrupt act, is limited to cases where there is a controversy concerning the right to or some interest in some specific thing between the assignee and a third person, and does not include an action to collect a simple debt." That was an action upon a promissory note made by the defendant to the bankrupt. But here the defendant does not nor did not owe the bankrupt anything, but on the contrary, the bankrupt owed him. Neither does the defendant owe the assignee anything. The demand is not a debt in any legal sense of the term, but a claim for unliquidated damages for the unlawful detention or conversion of property, which the latter is seeking to have ascertained and established by the judgment of this court.

This is an action to recover the value (as damages) of certain property alleged to have been transferred to the defendant contrary to the bankrupt act. The right to maintain it was never in the bankrupt. The assignee derives his right to sue, not from the bankrupt, but from section 35 of the act, as the representative and for the benefit of the other creditors. That section declares that a payment or transfer, made under the circumstances stated in the complaint, "shall be void, and the assignee may recover the property or the value of it," from the creditor receiving it. In the language of the clause of section 2, conferring jurisdiction upon this court, it is an action by the assignee "touching property of said bankrupt against a person claiming an adverse interest" therein.

It is admitted that the assignee might maintain replevin for the property in this court. Of this there can be no doubt. And it is equally plain that he may maintain trover for its value. The act gives the right to maintain either in the same direct language, "the assignee may recover the property or the value of it," and the one is as much an action "touching the property" as the other. So far as the nature of the controversy and the substantial rights of the parties are concerned, there is no difference between the two actions. In the one case the judgment is for the delivery of the specific goods or their value, and in the other for their value only. Each is a proper remedy for a wrong "touching property," in which the defendant claims, or may claim, an interest adverse to the plaintiff. See Smith v. Crawford [Case No. 13,030].

Upon the argument of the second cause of demurrer, it was assumed by counsel for defendant, and hardly denied by counsel for plaintiff, that section 11 of the act of June 22, 1874, which amends section 35 of the bankrupt act by substituting the word "knowing" for "reasonable cause to believe," is applicable to transactions occurring before the passage of the amendment. But this cannot be so. Upon the conditions stated in the complaint the right to recover this property, or the value thereof, in trust for the creditors, was vested in the assignee at and before the passage of the act. Even admitting that congress has the power to affect vested rights by retroactive legislation (Watson v. Mercer, 8 Pet. [33 U. S.] 110; Carpenter v. Pennsylvania, 17 How. [58 U. S.] 463; Evans v. Eaton [Case No. 4,559]), such effect will not be given to its enactments, unless the intention so to do plainly appears therein. In Harvey v. Tyler, 2 Wall. [69 U. S.] 347, the court said: "It is a rule of construction that all statutes are to be considered prospective, unless the language is express to the contrary, or there is a necessary implication to that effect." In Pacific Mail S. S. Co. v. Joliffe, Id. 458— Mr. Justice Field, speaking for the court— it was held that where a right arises under or is given by a statute, and it "has been so far perfected that nothing remains to be done by the party asserting it, the repeal of the statute does not affect it or an action for its enforcement. It has become a vested right which stands independent of the statute." In McEwen v. Bulkley, 24 How. [65 U. S.] 244, the rule is laid down "that it is the very essence of a new law that it shall apply to future cases; and such must be its construction, unless the contrary plainly appears." In U. S. v. Starr

[Case No. 16,379], the court says: "In the construction of a statute, it is a cardinal and well-established principle, that the court will never give to it a retrospective operation, unless it clearly appears from the language used that its makers intended it to have that effect; because laws are generally made to operate upon the future not the past transactions of men." To the same effect is the ruling in Schenck v. Peay [Id. 12,450]; Ex parte Billing [Id. 1,408]. The repeal of a statute, after a lien has been acquired under it, does not affect the lien. Ex parte Hope M. Co. [Id. 6,681].

There is not a single circumstance in or out of the act which indicates that congress intended section 35, as amended, to have a retroactive effect in any particular. It was amended by adding two words and a clause, and substituting the word "knowing" for the understood expression "reasonable cause to believe." Nothing is said or implied as to when it shall take effect, and therefore it comes within the general rule, declaring it to take effect from its passage and only to operate prospectively. As to sections 10 and 12 of the amendment, congress made special provision when they should take effect; the former after, and the latter before, its passage. This, itself, is a significant circumstance to show that it was the intention of congress to let the other sections take effect according to the general rule. In Hamlin v. Pettibone [Case No. 5,995], Mr. Justice Hopkins, in the course of an interesting and suggestive opinion upon this subject, says: "There are many provisions of the act of a practical character, that may be properly applied in further proceedings in all cases; such as those relating simply to the administration of the law, and as do not affect existing rights or the validity of contracts. Such provisions are of a remedial character, and may be presumed to have been intended to be applied to all cases; but such parts as relate to the substantial rights of parties, acquired under the original law, like the amendments to section 35, I think it must be held that congress did not intend to apply to cases occurring before the adoption of the amendment."

It is also a question whether the amendment has changed the legal effect of the section. The general rule is, that a party who has sufficient notice to put him upon inquiry is chargeable with knowledge of all facts which by a proper inquiry he might have ascertained. Goodman v. Simonds, 20 How. [61 U. S.] 363; Carr v. Hilton [Case No. 2,437]; Scammon v. Cole [Id. 12,432]. In Hamlin v. Pettibone, supra, Hopkins, J., says: "But it seems to me in almost every case where the jury would be warranted in finding that the party 'had good reason to believe,' under the old statute, they would be justified in finding that he 'knew,' under the amended law, so that practically the amendment is a merely verbal one in that respect." Unless, then, it be held that the amendment has substantially changed the section, simply because it is to be presumed that congress would not have changed its language without intending to vary its effect, I do not see that the amendment is material. Again, that must be a fraud upon the act, which evades or defeats its due operation. When, therefore, a creditor receives a payment of money or property with reasonable cause to believe his debtor insolvent, whether he also knows that a fraud upon the act is thereby intended, is a question of law rather than fact. This must be so, because the necessary effect of such payment is to prevent the money or property so paid from being distributed among the mass of creditors as the act provides. The due operation of the act in the premises is thereby evaded and prevented. This necessary consequence of his act the debtor is presumed to intend. But the creditor, under the circumstances supposed, also knows that the payment is a fraud upon the act, and therefore he is presumed to have knowledge that such was the debtor's intention in making it, because it was the necessary consequence of it.

Upon the argument no other objection was made to the sufficiency of the case stated in the complaint. But it is a question in my mind whether the assignee will not be bound to prove on the trial a demand and refusal of the property, or its value, and if so, whether the same should not be alleged in the complaint. Although the bankrupt act (section 35) declares this payment to the defendant void without qualification, from the nature of the case I think this is so only as against the assignee, representing the other creditors. It could not have been intended to make the transaction void as between Comstock & Co. and McCraken. Assuming this to be so, the receipt of the property by the defendant was not a tortious taking, and unless the subsequent detention has become wrongful for some other reason, it is necessary that there should be a demand and refusal to make it so. See Stanley v. Gaylord, 1 Cush. 536; Perkins v. Barnes, 3 Nev. 557; Whitman G. &. S. Min. Co. v. Tritle, 4 Nev. 498; Boulware v. Craddock, 30 Cal. 191; Marshall v. Davis, 1 Wend. 109; Barrett v. Warren, 3 Hill, 348.

Upon the points made in the argument the demurrer is overruled.