*Verdict set aside.*

## TAYLOR v. JONES.

If the goods of a plaintiff are so intermingled with those of a debtor, that, in his absence and without his identifying and pointing them out, it is impossible for a creditor of that debtor, or an officer having a writ against him, to distinguish them from those of the debtor, both the officer and creditor are justified in attaching and retaining the whole as the property of the debtor, until the plaintiff's goods are identified and pointed out, or an offer is made to identify and point them out; and these facts, constituting a defect in the plaintiff's title, may be shown under the general issue in trespass for taking the goods thus intermingled.

Taylor *v.* Jones.

If doubtful, from the evidence, whether his goods were thus intermingled, and by the fault of the plaintiff, that question should be submitted to the jury; and upon this point it would be entirely immaterial whether the intermixture were the result of an improper agreement or fraudulent contrivance, between the plaintiff and the debtor, if the goods were intermingled through any neglect of duty or want of due care and diligence on the part of the plaintiff.

Where the original taking, under process, of goods intermingled, is rightful and justifiable; if not a conclusion of law from the facts proved, it is for the jury to determine, under proper instructions, whether or not a neglect or refusal to surrender them, upon demand made and an offer to point them out, and a subsequent sale thereof under process, may have rendered the original taking a trespass.

To make one who originally acted with propriety under legal process liable, *ab initio*, for subsequent illegal acts, he must be shown to have grossly abused the authority under which he acted; such an error or mistake as a person of ordinary care and common intelligence might commit, will not amount to an abuse; but there must be such a complete departure from the line of duty—such an improper and illegal exercise of the authority to the prejudice of another—such an active and willful wrong perpetrated—as will warrant the conclusion that its perpetrator intended from the first to do wrong, and to use his legal authority as a cover to his illegal conduct.

There is no legal presumption that one partner concurs in the wrongful acts of another; and he is not liable therefor, unless they were done within the proper scope and business of the partnership, or were authorized or adopted by him.

Where the verdict is for a sum larger than the *ad damnum* in the writ, the difficulty may always be remedied by entering a *remittitur* for the excess; the *ad damnum* may be amended after verdict, when it is apparent, from the declaration itself, that it was left blank, or too small a sum inserted through mistake or inadvertence only; and if there has been a full and fair trial on the merits, which appear from the declaration, without any knowledge by either party of the defect, judgment may be rendered, after amendment, without a new trial; if it does not appear that the defendant had no knowledge of the defect, the amendment may be made, but a new trial must be granted, to give him an opportunity to contest the enlarged demand; but, in actions sounding in damages only, where the plaintiff deliberately estimates the injury to himself, and there is only a difference in judgment between the jury and him, as to the nature and aggravation of the injury, no amendment increasing the *ad damnum* to cover the verdict will be allowed, and the only remedy for an excessive verdict is by a *remittitur;* yet the

Taylor *v.* Jones.

court, in their discretion, may permit the *ad damnum* to be increased in any case, after a full and fair trial, upon the claim of an appeal or review by the defendant.

TRESPASS, for taking sundry articles of personal property, of the alleged value of $254.50, in the city of New-York, and converting the same to the defendant's use, to the damage of the plaintiff the sum of $300. Plea, the general issue. The plaintiff's writ was dated June 7, 1859.

The property was composed principally of such articles of household furniture, &c., as by the law of this state would be exempted from attachment. The plaintiff introduced evidence tending to show that he was the original owner of the property in dispute; that in the year 1855 he removed from Northwood, in this state, to Deposite, county of Broome, New-York, and that he remained there until the spring of the year 1857, when he concluded to return to New-Hampshire; that while at Deposite he resided in the same house with one Bickford Rand; that said Rand returned to Boston with the plaintiff; that in March, 1857, Rand and the plaintiff each packed their household goods, &c., into boxes, for the purpose of removal; that part of said goods were conveyed to the depot, on the New-York and Erie Railroad, at Deposite, by each owner; that after the boxes were all at the freight depot, Buel, the station-agent, asked Rand, who was the only owner present, how they should be marked. Rand replied, They are all going to the same place, Boston. Buel said it would save making out two bills; they might be marked just as well in the name of one of them. Buel then marked them "B. Rand, Boston." Taylor was not present when they were marked, and did not know they were marked in Rand's name until after they had started off in the passenger train, when he made some inquiry of Rand about the goods, and Rand showed him the receipt

or bill. Taylor testified that he gave no previous directions to have them marked in Rand's name; and so testified Rand; and there had not been any arrangement between them about it. Taylor and Rand, with their families, came on in the cars to South-Berwick, Maine. Their goods not arriving, the plaintiff sent eight dollars to his wife's brother, Kendrick, of Boston, requesting him to proceed to New-York, to look after his goods. On the 28th of April, Kendrick did proceed to New-York city; went to the depot of the New-York and Erie Railroad; found that the goods had been carried off by a sheriff; went to the sheriff, and found that he had taken them under the directions of Tibbets & Jones, merchants, on a claim in their favor of about seventy dollars against Holmes & Rand; went with the sheriff first to said Tibbets; told Tibbets his errand to New-York; that he came after the goods of Taylor and his sister; that if he would go where the boxes were he would point out Taylor's goods; that they were poor, and had no clothing, nor bed, nor furniture at home, and requested him to give them up; that Tibbets introduced him to his partner, Jones, the defendant; that he stated to him that he had come after Taylor's goods; that Jones said he would not give them up; that Kendrick told him he could satisfy him about the mark, and why they were marked in Rand's name, and that if they would show him the boxes he would point out Taylor's goods. Jones stated that they had attached these goods as Rand's property, on a debt against Rand, and they could hold them, and would not give them up; that if they were replevied, they would replevy them back again. He said he had no demand against the plaintiff. Jones said Rand was an absconding debtor, and that he had made an affidavit and given bonds according to law, and would not give up the goods.

Taylor testified that when he left New-York State he did not owe any debts.

Jones, the defendant, testified that he never saw the witness, Kendrick, until the day of trial; did not recollect of Tibbets, his partner, introducing him to witness at any time; never directed the attachment of Rand's or Taylor's property; did not know that his people ever traded with Rand;—if his partner sued, he sometimes disclaimed the suit; disapproved of law actions, and generally went in for a compromise; heard of this attachment about a year and a half ago; Tibbets was his partner then, in 1857; had dissolved since; then kept an extensive liquor store, number 58 Broad street, four stories high, 110 by 25 feet wide.

Luther C. Tibbets, called by the defendant, testified that he was partner in business with the defendant, in 1857, at number 58 Broad street; that he never introduced Kendrick to Jones; that he never saw them together; thinks Jones was then out of the city; admitted that he did see Kendrick in the store; that Kendrick introduced himself to him, and went into conversation about the goods; conversed about half an hour; told him part of the goods were Taylor's, and he was sent on to see about them; asked him what part were Taylor's: Kendrick said he could tell them if he could see them; said the boxes were marked B. Rand, some not marked at all; told him they were attached on a debt against Rand; told him once, if he would describe them, he should have them; again told him it was a pretense and contrivance to defraud them of their debt, between him and Rand; said the officer attached them on a writ, at the foot of Duane street: kept the goods till September 20, 1857, and then sold them; did not know where the writ was; in July, 1857, was at South-Berwick, Maine; saw the plaintiff and his wife, and Rand and his wife together; Taylor and wife told a pitiful story, and that they had suffered in consequence of the loss of their clothing, beds, &c.; told them that he had paid twelve dollars freight-money from Depos-

ite to New-York city; if they would pay that, he would send round their property to them; they said they were poor, and could not raise the money, but, on parting, expected to receive the freight-money and to forward the goods; waited some time, then sold the property attached; it had remained packed to near the time of sale; at the auction bid off many of the articles of furniture and clothing, and sent them to Mrs. Taylor; thought the goods sent back cost him thirty-five dollars, and he sold goods to the amount of seventy-five or seventy-eight dollars in the whole; said he was the member of the firm that looked after the collection of the demands due to the firm, and did direct this suit against Rand, and the attachment of these goods.

The plaintiff, Taylor, denied the existence of any contract binding him to forward freight-money; admitted he did receive, by way of railroad, a few articles of his property, in a damaged state, for which he paid as freight two dollars and thirty-two cents. The plaintiff offered other testimony, tending to show the inconvenience, loss and suffering to himself and family, in consequence of the taking and detention of his goods.

Upon this evidence, the court charged the jury that if any improper agreement or contrivance, existed between the plaintiff and Rand, by which he gave authority to Rand or to Buel to mark the goods in Rand's name, then the plaintiff could not recover in this action; that although in consequence of the goods being marked in Rand's name, they might be exposed to attachment on a debt against Rand, yet if they believed that the plaintiff was innocent in this respect, and that the defendant knew, or had good reason to believe, upon the notice subsequently given him, that the goods in question were the property of the plaintiff, and not of Rand, then the detention of the goods from the time of such notice was wrongful, and this action could be maintained; that, under the general issue,

the defendant might show the attachment of the goods in mitigation of damages; that if the jury found the property of the plaintiff wrongfully detained by the order or act of his partner, Tibbets, in consequence of a debt due the firm, then the defendant would be chargeable, as availing himself of the wrongful acts of his partner, in order to procure a profit to himself; and in prosecuting their common purpose to procure an advantage from the plaintiff's goods, any knowledge or notice that might lead to charge Tibbets, would so far bind the defendant; the law would presume the defendant as concurring and aiding in the wrongful act of his partner; that in this action it was competent for the jury to give as damages not only the value of the property converted, but such vindictive damages or smart money as they might think proper.

The defendant requested the court to instruct the jury that if Taylor did not see to the marking of his goods himself, and gave no directions to any other person, but left the marking and forwarding to Rand, and Rand directed them to be marked, like his own goods, with his name, then the defendant should not suffer by Rand's acts, and would not be liable for taking them for Rand's debt. But the court declined to do so, and in addition to the ground already stated by the court, instructed the jury that if Taylor did not direct Rand to mark his goods with Rand's name, then Rand had no right to do so, and that Taylor should not suffer from such unauthorized acts of Rand.

The jury having returned their verdict for $500, the plaintiff moved to amend his writ, by increasing the *ad damnum*. The court allowed this amendment against the objection of the defendant.

*Wells & Eastman,* for the defendant.

*Wheeler & Hall,* for the plaintiff.

Taylor *v.* Jones.

FOWLER, J.   When the plaintiff's goods were attached by the officer, by direction of the defendant's partner, Tibbets, they were not only intermingled with those of the debtor, Rand, but actually marked with his name, so that, in the absence of the plaintiff, and without his identifying and pointing them out, it would seem to have been utterly impossible for the officer or Tibbets to have distinguished them from those of Rand.   If this were so, both the officer and Tibbets were justified in attaching and holding the goods as Rand's, until the plaintiff claimed and identified, or offered to identify and point them out, and separate them from those of Rand.   *Walcott* v. *Heath*, 22 N. H. 196, and authorities on page 211 ; *Robinson* v. *Holt*, 39 N. H. 557, and authorities on pages 563 and 564 ; *Wilson* v. *Lane*, 33 N. H. 466 ; *Bond* v. *Ward*, 7 Mass. 127 ; *Shumway* v. *Rutter*, 18 Pick. 443 ; *Lewis* v. *Whittemore*, 5 N. H. 366.

Whether the plaintiff's goods were thus intermingled, and by his own fault or negligence, if doubtful upon the evidence, was a question for the jury.   It may have been wholly immaterial, upon this point, whether there were any improper agreement or fraudulent contrivance between the plaintiff and Rand, in consequence of which the plaintiff's goods had become intermingled with those of Rand.   It would seem to have been clearly the duty of the plaintiff to see to it that his own goods were properly marked and kept separate from all others; and, if he neglected this duty, and gave no instructions to any other person to attend to it for him, but left the marking and forwarding to Rand, he must be held responsible for his negligence, and his goods must be regarded as having been intermingled with those of Rand through his own fault or neglect.   If the plaintiff and Rand conveyed their goods to the depot together, wholly undistinguished from each other, and the plaintiff left them thus intermingled in the control of Rand, and by Rand's assent the station-

agent marked the whole with his name, it would seem to have been clearly through the fault or neglect of the plaintiff that his goods were thus marked. If, by himself intermingling his goods with those of Rand, and leaving them thus undistinguished, the plaintiff permitted the station-agent to understand and act upon the understanding that the whole belonged to Rand, or might properly be marked in Rand's name, by his neglect and omission of duty, he would be justly held responsible for the consequences of that action, so far as innocent third persons were concerned, whether he were guilty of any fraud in allowing his goods to be thus marked or not. Beside, the case finds that after the plaintiff and Rand had started off together in the passenger train, the plaintiff was informed of what had been done, and the way-bill or receipt for all the goods, as belonging to Rand, or as marked in his name, was exhibited to him ; but it does not find that he made any objection to the arrangement, or took any steps to avoid the consequences of it, so that he might well be taken to have assented to it; and his goods might, in law, therefore, well have been regarded, as the jury could hardly have failed to find them, in fact, to have become intermingled with those of Rand, at the time of the attachment, by the silent, if not direct assent, and manifestly by the palpable negligence of the plaintiff himself.

If the plaintiff's goods were intermingled with those of Rand through his own fault, he had neither the possession, or right of possession, of the goods as against a creditor or an officer having process against Rand, and attaching the whole intermixture as the property of Rand, and, therefore, could not maintain trespass for taking them. This was a defect in the plaintiff's title, which his own evidence disclosed, but which the defendant might have shown under the general issue, had that question arisen upon the trial, as it does not appear to have done. *Fuller* v. *Rounceville*, 29 N. H. 554.

Taylor v. Jones.

The instructions for which the defendant asked upon this subject were sufficiently favorable to the plaintiff, and those given by the court calculated to mislead the jury, to the serious prejudice of the defendant.

If the jury, under proper instructions, had found that the original attachment of the plaintiff's goods, by the direction of Tibbets, was rightful and justifiable; if it did not follow as a conclusion of law from the facts proved, it would have remained for them to determine, under like instructions, whether the neglect or refusal to surrender the goods on demand made therefor, and an offer to point them out, and their subsequent sale under the process, could make the defendant a trespasser *ab initio*, and responsible for the original taking as wrongful. Had it been clear upon the evidence, as it was not, that the defendant was the party to whom Kendrick applied to surrender the goods, and offered to point them out, it would still have been a question whether he had so conducted as to be liable in trespass.

In order to make one who has acted with propriety under legal process liable, *ab initio*, for subsequent illegal acts, it must be shown that he has abused the authority under which he acted. *Gordon* v. *Clifford*, 28 N. H. 412. An intention afterward to abuse the authority will not do it. *French* v. *Marston*, 24 N. H. 450.

What constitutes an abuse of authority is well settled. Mere nonfeasance does not amount to it. *The Six Carpenters' Case*, 8 Coke 290; *Gardner* v. *Campbell*, 15 Johns. 402, where it was held that a person, taking the goods of another under lawful authority, does not become a trespasser, *ab initio*, by refusing to restore them after his authority is determined. To the same point are *Dunham* v. *Wyckoff*, 3 Wend. 280; *Hall* v. *Tuttle*, 2 Wend. 475; *Marshall* v. *Davis*, 1 Wend. 109; *Judd* v. *Fox*, 9 Cow. 259; *Clarke* v. *Skinner*, 20 Johns. 465; *Mills* v. *Martin*, 19

Johns. 32; *Morris* v. *Dewit*, 5 Wend. 71; *Gates* v. *Lownsbury*, 20 Johns. 427.

Such an error or mistake as a person of ordinary care and common intelligence might commit, will not amount to an abuse; but there must be such a complete departure from the line of duty, or such an improper and illegal exercise of the authority to the prejudice of another—such an active and willful wrong perpetrated—as will warrant the conclusion that its perpetrator intended from the first to do wrong, and to use his legal authority as a cover for his illegal conduct. Where the acts proved warrant no such conclusion, the person charged with them is not a trespasser. *Barrett* v. *White*, 3 N. H. 210, and authorities cited by Chamberlain *arguendo*, and in the dissenting opinion of *Green*, Justice; *State* v. *Moore*, 12 N. H. 42; *Ferrin* v. *Symonds*, 11 N. H. 363.

In the case before us, had it been clear that the defendant was the party neglecting or refusing to surrender the plaintiff's goods at the demand of Kendrick, the jury might well have found that there was subsequently no such departure from the line of duty, no such improper and illegal exercise of the authority of the process, no such active and willful wrong committed, as would justify the inference that he intended to do wrong from the first, and to use the process as a cover for the outrage. Even taking Kendrick's account of his interview with the defendant, it does not necessarily show that, in refusing to surrender the goods, he might not be acting under such an error or mistake as a person of ordinary care and common intelligence might commit. Kendrick testified that the defendant said they had attached the goods as Rand's property, on a debt against him; that they could hold them, and would not give them up; that Rand was an absconding debtor; that an affidavit had been made and bonds given as required by law in such case, and that if the goods were replevied they would replevy them back

again. We can perceive nothing in this testimony, if it were all true, which shows conclusively that the defendaut might not have been acting in perfect good faith, as to what he honestly believed to be his legal rights, in refusing to surrender the goods; and nothing to show that, having taken the goods with his debtor's name marked upon them, he might not have been acting under such an error or mistake, in retaining and selling them, as a person of ordinary care and common prudence might readily and naturally fall into.

In *Lewis* v. *Whittemore*, 5 N. H. 366, it was expressly held that an officer had a right to attach the goods of another intermixed with those of the debtor, and hold them until they were identified by the owner and a redelivery demanded; that he could not be treated as a trespasser for doing what he had a right to do; that if, after identification and demand for re-delivery, he refused to give up the goods and proceeded to sell them, it would be a conversion for which trover would lie, but that trespass could not be maintained for the original taking. See also *Shumway* v. *Rutter*, 8 Pick. 443; *Bond* v. *Ward*, 7 Mass. 127; *Wilson* v. *Lane*, 33 N. H. 466; *Fuller* v. *Rounceville*, 29 N. H. 544.

In our view, therefore, it might have been for the jury, in the present case, to say whether the defendant had been guilty of such an abuse as to be legally liable as a trespasser *ab initio*. If, as matter of law on the facts proved, or upon the finding of the jury, he had not been thus guilty, he could only have been liable, in case or trover, for such sum in damages as would compensate the plaintiff for the injury sustained by that portion of the acts of the officer which was illegal and wrongful, while the writ would have been his protection for whatever was legally and properly done under it. Had the evidence disclosed a state of facts under which trespass might clearly have been maintained, whether it would have been a case where

the rule in relation to vindictive damages would have applied, it is not now necessary to inquire.

The instructions to the jury, though substantially correct, might, in our judgment, have misled the jury in another respect. They were, in effect, that the defendant was answerable for the wrongful acts of his partner, Tibbets, whether he authorized or adopted them or not, inasmuch as those wrongful acts, being done to secure the payment of a debt due the firm, he would be chargeable as availing himself of the wrongful acts of his partner, to secure an advantage to himself; that in prosecuting their common purpose to procure an advantage from the plaintiff's goods, any knowledge or notice that might lead to charge Tibbets, would so far bind the defendant, the law presuming the defendant to concur and aid in the wrongful acts of his partner.

One question raised by the evidence was, whether the defendant had himself been guilty of any wrong—whether he ever had any knowledge of the attachment, and assented to or adopted it—and whether he ever saw the plaintiff's agent, Kendrick, or refused to release the goods attached upon demand made for them, and an offer to point them out. The effect of the charge was to render this question wholly immaterial, and to hold the defendant responsible for the wrongful conduct of Tibbets, whether it were authorized or adopted by him or not, and whether such wrongful conduct were within the proper scope and business of the partnership or not. Now we take it to be entirely clear that the only ground upon which one partner can be held responsible for the wrongful acts of another is that of agency—the wrongful acts being done under the express or implied authority of the non-participating partner. There is no legal presumption that one partner concurs in the wrongful acts of another. If, then, the jury had found from the evidence, as they manifestly might well have done, that Tibbets was the partner upon

whom the plaintiff's agent, Kendrick, made the demand, and to whom he offered to point out the goods, and who thereupon neglected or refused to give them up, if such neglect or refusal had been in law such a wrongful act as would have enabled the plaintiff to maintain his action for trespass or trover against Tibbets; still, as we understand the law, it is entirely clear that the defendant would not have been liable therefor as his partner in business merely, unless the jury had found that, in thus neglecting and refusing, Tibbets was acting within the proper scope and business of the partnership, or that the defendant had authorized or adopted his acts. Story on Partnership, secs. 166, 167, 168, and authorities; Story on Agency, secs. 455, 456, authorities and notes.

The only remaining question relates to the correctness of the ruling of the court below, in permitting the plaintiff to increase the *ad damnum* of his writ from $300 to $500, after verdict, in order to cover that verdict, against the defendant's objection. This is a matter of practice, and from the best examination we have been able to give the subject, we are of opinion that the amendment was improperly allowed.

From a careful comparison of the various authorities, we are satisfied that the reasonable rule, in relation to amendments after verdict, and one which reconciles most, if not all of the numerous decisions, would be, that where the verdict is for a sum larger than the *ad damnum*, the difficulty may always be remedied by entering a *remittitur* for the excess; that the *ad damnum* may be amended after verdict, when it is apparent from the declaration itself that it was left blank, or too small a sum inserted, through mistake or inadvertence only; that if there has been a full and fair trial on the merits appearing on the face of the declaration, without any knowledge by either party of the defect, judgment may be rendered without a new trial; but that, if it does not appear that the defendant had no

Taylor *v.* Jones.

knowledge of the defect, the amendment may be made, but a new trial must be granted, to give him an opportunity to contest the enlarged demand; that, in actions sounding in damages only, where the plaintiff deliberately estimates the injury to himself, and there is only a difference in judgment between the jury and himself, as to the nature, extent and aggravation of the injury, no amendment increasing the *ad damnum* to cover the verdict will be allowed, and the only remedy for an excessive verdict is a *remittitur;* yet, that the court, in their discretion, may allow the *ad damnum* to be increased, in any case, where, after a full and fair trial upon the merits, the defendant claims and insists upon an appeal or review. Howe's Pr. 305; *Hoit* v. *Molony*, 2 N. H. 322; *Dawkes* v. *Pilfield*, Cro. Jac. 297; *Pilford's Case*, 10 Coke 115; *Chewly* v. *Morris*, 2 W. Bl. 1300; *Curtiss* v. *Lawrence*, 17 Johns. 111; Tidd's Pr. 653; *Tomlinson* v. *Blacksmith*, 7 D. & E. 132; *Pearse* v. *Cameron*, 1 M. & Sel. 675; *Bogart* v. *McDonald*, 2 Johns. Cases 219; *Scutt* v. *Woodward*, 1 H. Bl. 238; *Wilder* v. *Hendy*, 2 Str. 1151; *Marshall* v. *Riggs*, 2 Str. 1162; *Livingston* v. *Rogers*, 1 Caines 584, 588; *Usher* v. *Dansey*, 4 M. & S. 94; *Perseval* v. *Spenser*, Yelv. 45; *McLellan* v. *Crofton*, 6 Greenl. 307; *Hutchinson* v. *Crosser*, 10 Mass. 251; *Whittier* v. *Varney*, 10 N. H. 291; *Green* v. *Bennet*, 1 D. & E. 782; *Danielson* v. *Andrews*, 1 Pick. 156.

With these views, the verdict must be set aside, and

*A new trial granted.*