# Talmadge *et al. versus* Scudder & Scudder.

*Basis of right to recover in Trespass.—Liability of Purchaser of Personal Property sold by Sheriff.—Remedy of real Owner.*

1. In trespass for taking and carrying away personal property of the plaintiffs, which had been sold by the sheriff as the property of another, it is not material whether the contract (under which defendant claimed that the property taken had come into the possession of him from whom it was sold by the sheriff) was made by one or both of the plaintiffs, provided the persons suing, had the possession or the immediate right of possession at the time the alleged trespass was committed. An executory contract by one of two owners is not evidence to disprove their joint title, nor a bar to their joint recovery.

2. A purchaser at sheriff's sale who does nothing more than purchase, is not responsible in trespass, even though the seizure and sale be tortious. He is not a trespasser by relation. So also when the sheriff sells and delivers

[Talmadge *et al. v.* Scudder & Scudder.]

possession to the purchaser. The remedy in such case is detinue, replevin in the detinet, or trover after a demand and refusal.

3. Where a sheriff sold a defendant's interest in personal property, but made no actual delivery to the purchaser, and the property was afterwards taken away by them : *Held*, that there was no such necessary constructive connection between the possession of the sheriff and that subsequently taken by the purchasers, as would warrant the court below in charging the jury that this subsequent removal was a receiving from the sheriff, for which they were not liable in trespass at the suit of the actual owners of the property.

ERROR to the Common Pleas of *Wayne county*.

This was an action of trespass brought to September Term 1856, by Isaiah Scudder and Daniel C. Scudder, against Henry S. Talmadge and Richard Humphrey, for taking and carrying away a quantity of lumber claimed as the property of the plaintiffs.

The case was this:—In 1855, Albert Cottrell entered into a contract to build a bridge across the Delaware at Equinunk, and agreed with the plaintiffs (who were lumbermen) or one of them, to furnish the lumber for this purpose. A contract to this effect, signed by D. C. Scudder and Cottrell, was given in evidence.

A large quantity of lumber was prepared, part of which was deposited on the bank of the river at the eddy lot, the site of the bridge which belonged to Scudder, some at Matthews's Mill, where it had been sawed, and some on another lot belonging to the Scudders.

The bridge was commenced on the 25th of May 1855, and the work continued until June 29th 1855, when the bridge fell down. Cottrell then drew the lumber out of the river and piled it up on the rocks, and soon after left that part of the country.

One of Cottrell's creditors, John D. Laban, sued out a writ of foreign attachment against him, under which this lumber was attached, sold by the sheriff, and purchased by Humphrey for the firm of Talmadge & Humphrey. There was evidence that at the sale the lumber was claimed by the Scudders, in consequence of which the sheriff announced that he would only sell Cottrell's interest in it.

In the spring defendants went upon the premises, and removed the lumber that was at Matthews's Mill, and the lumber on Scudder's lot, to their bankage ground on the Delaware, which was just above Scudders' eddy lot, and rafted it off. This action was then brought as above stated.

On the trial the defendants' counsel requested the court to instruct the jury,

1. That if the jury believe from the evidence, that D. C. Scudder was alone a party to the contract, and that Isaiah was not a party to it, the plaintiffs cannot recover.

2. If the jury believe from the evidence that Cottrell took a

[Talmadge *et al. v.* Scudder & Scudder.]

delivery of the lumber when it was deposited and framed, then plaintiffs cannot recover.

3. If the jury find from the evidence that Cottrell directed the teamsters where to deposit the lumber then, he there took a delivery of it.

4. If the jury find from the evidence that Cottrell had taken possession of the lumber where it lay then, their verdict must be for defendants.

5. That an action of trespass cannot be maintained against a purchaser at sheriff's sale, and therefore they must find for the defendants. The fifth point was answered in the negative, thus: "If the defendants were mere purchasers at a sheriff's sale, we would affirm the point. If the officer had removed the property and delivered it off the premises to the defendants, he alone would have been a trespasser. But these defendants entered the close and took and carried away the property. If they had gone there with the sheriff and assisting him in removing it, they would have been joint trespassers with him. Beside, the plaintiffs claim for what was not sold by the sheriff, and whether such property was taken is a question of fact for the jury, and therefore we cannot instruct them to find for defendants as requested."

The first point was marked "Affirmed, qualified;" the second, third, and fourth were "affirmed." In the general charge, the court below (BARRETT, P. J.) said that "the plantiffs were entitled to recover for just so much as they have shown title to.

"The lumber used in the bridge, and all the lumber found at the place of delivery, must be deemed and taken to have been delivered to the contractors. By the act of delivery the plaintiffs parted with the title, and it vested in the contractor. The sheriff's sale conveyed it to the defendants.

"The plaintiffs claim for a lot of lumber at Matthews's Mill not claimed by Cottrell, and not attached or sold by the sheriff; and also for a lot of about three thousand feet at the eddy lot, hauled after the bridge went down, and which was not sold by the sheriff. If such piles of lumber were at the places not sold by the sheriff, belonging to the plaintiffs, and were taken and carried away by the defendants, they have a right to recover for the value. The defendants claim no title to any lumber there except what they derived through the sheriff's sale.

"The plaintiffs claim more. They claim for all of the lumber sold at Matthews's Mill; for all that was sold on the Scudder lot, and for a lot on the bank of the river near the Ferry House, upon the ground that it never had been delivered to the contractor under their agreement, and that the title remained in them. If you believe the evidence of the contractor, it had not been delivered. He says he did not at any time agree to accept it, until it was delivered on the bank of the river convenient to

[Talmadge *et al. v.* Scudder & Scudder.]

be used in the construction of the bridge. He admits that he had a portion of each pile bored and framed where it lay, but that it was still incumbent on the plaintiffs to deliver it at the bridge, and it is in evidence that they had been in the habit of hauling and delivering timber at the bridge from the same points after it was framed. Exercising acts of ownership over it would be some evidence of delivery of possession, but not conclusive. All that was done might have been done by an understanding between the parties, without waiving the conditions of the contract in respect to the delivery.

"As to these lots of lumber, the ownership and possession depends upon the question of delivery. If it had not been delivered to the contractor, Scudders had not parted with the property, the possession remained in them, and they should recover for it. If, on the contrary, they had delivered the possession at a point where Cottrell agreed to accept it, they cannot recover for it. Cottrell had a right to waive the conditions of their agreement. The question of the delivery is for the jury, and is referred to them under all the evidence.

"If the defendants jointly took and carried away any lumber belonging to the plaintiffs, and not sold by the sheriff, they are clearly entitled to recover for that amount.

"If in addition they took and carried away other lumber belonging to the plaintiffs, and which had not been delivered to Cottrell, they are entitled to recover for it. They should recover for all of the lumber taken by them to which Cottrell had no title, the value of the lumber at the place where it lay, and at the time when it was taken.

"If they took no lumber to which the plaintiffs had title, then they were not trespassers, and your verdict should be for defendants."

Under this charge there was a verdict and judgment for plaintiffs for $209, whereupon the defendants sued out this writ, and assigned for error here the following:—

1. The court erred in their answer to the defendants' first point. The court marked it "affirmed, qualified." They should have affirmed it unconditionally.

2. The court erred in their answer to the defendants' fifth point. This point should have been affirmed.

3. The court erred in submitting as a question of fact for the jury, whether the defendants took the plaintiffs' lumber from the eddy lot, drawn after Cottrell left, as there was not a particle of evidence that defendants touched a stick of that lumber or any other on the eddy lot.

*C. P. & G. G. Waller*, for plaintiffs in error.—1. The existence of any contract with Cottrell between I. Scudder or I. &

[Talmadge *et al. v.* Scudder & Scudder.]

D. C. Scudder, having been denied on oath by I. Scudder in the interrogatories propounded under the foreign attachment, and the fact that there was a written contract, signed by D. C. Scudder alone, entitled the defendants below to an unconditional affirmance of their first point.

2. The action should have been replevin and not trespass: Ward *v.* Taylor, 1 Barr 238.

3. There was no evidence that defendants drew any lumber from the mill, not sold by the sheriff, nor that they took any from the eddy lot; and the court were wrong, therefore, in submitting these facts to the jury.

*Minor* and *Dimmick,* for defendants in error.—1. The first point of defendants below was not pertinent to the issue, though the evidence showed that the contract was made by both the Scudders. The point was not who made the contract, but who owned the lumber, and of this there was no doubt. The claim was for the value of the lumber which belonged to the Scudders jointly, and not delivered to Cottrell or any other person. It was not based on the contract with Cottrell.

2. Abstractly the second point is not without force, but as applied to this case was properly overruled by the court below. The lumber belonged to the Scudders. The sheriff had notice not to sell it, and he only sold Cottrell's interest in it. He neither removed nor gave possession of the lumber to the plaintiffs in error, nor in any way changed or disturbed the possession. But defendants did, and in so doing rendered themselves liable in trespass; the defendants in error had the actual possession and the right of possession, when the lumber was taken away against their will.

Ward *v.* Taylor does not apply to this case. It only decides that no one can be made a trespasser by relation. Here the trespass was committed by the defendants while plaintiffs were in possession: see Hoyt *v.* Gelston, 13 Johnson R. 151; 1 Chitty Pl. 203; Ward *v.* Macauley, 4 Term R. 483.

3. This point is so common that it might be stereotyped: Myers *v.* Hart, 10 Watts 107. There was evidence from which the jury could properly infer that lumber was taken from the mill and the eddy lot, and this assignment of error is merely an appeal from a court which heard the evidence to one which did not.

The opinion of the court was delivered, March 25th 1861, by

STRONG, J.—This was an action of trespass for taking and carrying away a lot of lumber. That the ownership of the lumber had been in the plaintiffs, or at least in one of them, was not seriously controverted, but the defence was that it had been

[Talmadge *et al. v.* Scudder & Scudder.]

sold and delivered to one Albert Cottrell, as whose property it was afterwards seized and sold by the sheriff; Humphrey, one of the defendants, becoming the purchaser. Whether a delivery had been made to Cottrell, so as to vest the title in him before the seizure by the sheriff, was submitted to the jury as a question of fact, and they have found that there had been no such delivery. Of course Humphrey took nothing under the sheriff's sale. None of the errors assigned relate to this part of the case. They are directed rather to the charge of the court respecting the plaintiffs' right to sue in the form which they adopted.

On the trial, the defendants gave in evidence a written agreement between Cottrell and Daniel C. Scudder, one of the plaintiffs, by which the latter agreed to furnish the lumber for a bridge, to be erected by the former. The agreement was not signed by Isaiah Scudder, the other plaintiff. There was also other evidence that Isaiah Scudder had not joined in the contract to furnish lumber for the bridge. The defendants then asked the court to instruct the jury, that if they believed that D. C. Scudder was alone a party to the contract, and Isaiah Scudder was not a party to it, the plaintiffs could not recover. To this point the court answered, " Affirmed, qualified." Precisely what was intended by this does not appear from the charge, as sent up with the record, but it is insisted that the point should have been affirmed without qualification. We are of opinion, however, that it was answered more favourably for the plaintiffs in error than they had a right to require. The question was not whether both the plaintiffs had made a contract to furnish the lumber to Cottrell, but whether they both owned it, and had the possession or a right to the immediate possession, when the alleged trespass was committed. An executory agreement to sell the lumber made by one of them, did not of course disprove their joint ownership, and was not therefore conclusive against the right to recover.

The defendants also asked the court to charge the jury that an action of trespass cannot be maintained against a purchaser at sheriff's sale, and that therefore their verdict must be for the defendants. They now assign as error that this point was denied as applicable to the present case, and we are referred to Ward *v.* Taylor, 1 Barr 238, as sustaining the assignment. That a mere purchaser at a sheriff's sale who does nothing more than purchase, is not responsible in trespass for a wrongful act of the sheriff in levying on the goods and selling them, is undeniable. His purchase does not of itself make him a participant in the wrongful seizure. He is not made a trespasser by relation. But the question whether a purchaser at sheriff's sale of personal property tortiously levied upon under an execution against another than the owner, is responsible to the owner in trespass

[Talmadge *et al. v.* Scudder & Scudder.]

for carrying it away after the sale, is a very different one. The levy of the sheriff, though tortious, divests the possession of the owner. When the sheriff sells and delivers to the purchaser, some, perhaps most, of the authorities, seem to be that trespass against the purchaser cannot generally be maintained, unless the goods have come to his possession, in part at least, through his own fault. Thus it is laid down in Bacon's Abr. E. 2, that if the goods of J. S. are illegally taken in execution by the sheriff, and delivered by him to J. N., trespass will not lie against the latter, because he obtained the possession of the goods lawfully. So in 37 Eliz., Day *v.* Austin & Bisbich: "If a stranger take my horse or goods and sell it to J. S., and J. S. take it accordingly, no action of trespass lies against him." The same case is reported in Owen 70. In Wilson *v.* Barker, 4 B. & Ad. 614, it was held that trespass would not lie against one knowingly receiving goods wrongfully seized, and refusing to deliver them up. The remedy in such cases is detinue or replevin in the *detinet.* In Stork *v.* Livingston, 6 Johns. 44, it appeared that a constable had tortiously taken the plaintiff's horse and sold it at auction to the defendant, who held it. The court held that trover would not lie till demand and refusal, because the defendant came lawfully by the horse. The decision involved, of course, a denial that trespass would lie, for a taking which warrants an action of trespass is necessarily a conversion. To the same effect are Marshall *v.* Davis, 1 Wend. 109; Nash *v.* Mosher, 19 Id. 435; Barrett *v.* Warner, 3 Hill 348. But a tortious taking from the owner does not divest his property, nor even his right to immediate possession, except when a seizure has taken place under legal process, and then only so long as the goods are in the legal custody of the officer or bailiff. When, therefore, a sheriff illegally takes the goods of one person in execution for the debt of another, and sells and delivers them to a third person, the reason why the owner cannot maintain trespass against the purchaser is not that his right to immediate possession is defective, but because the purchaser's taking is held not to be unlawful. Replevin in the *detinet* may be maintained against him. Nor is this doctrine peculiarly applicable to the case of an illegal seizure by a sheriff. If a stranger, not an officer, tortiously seize my goods and afterwards deliver them to another, I cannot maintain trespass against that other for the same reason, though I have a right to their present enjoyment, and may recapture them. The obstacle in the way of maintaining trespass is gone, however, when the goods are not taken by delivery from the first wrongdoer, or where the defendant is not a bailee. If he has acquired the actual possession by trespass, even upon the first trespasser, he is responsible to the owner in

[Talmadge *et al. v.* Scudder & Scudder.]

trespass: Acker *v.* Campbell, 23 Wend. 373; 1 Sid. 438; 3 Hill 149; or if by fraud.

In the present case the wrong complained of was not the illegal seizure, by the sheriff, of the lumber as Cottrell's. It was for an alleged subsequent act of the defendants in taking and removing it, an act done some time after the sheriff's sale. When the sheriff sold, no actual delivery was made to the purchaser. The lumber remained all unmoved, and a part of it upon a lot of one of the plaintiffs. Indeed, the sheriff appears to have testified that he only sold Cottrell's interest in it. Under these circumstances, it was not for the court to say that the subsequent removal of the lumber was a receiving from the sheriff, and that consequently there was no unlawful taking, and that the defendants were entitled to a verdict; and especially was it not for the court so to say when the plaintiffs' claim was in part for carrying away lumber not sold by the sheriff, as appears from the charge of the learned judge, and as there was evidence that all the lumber was not sold. This alone would justify the refusal to affirm the defendants' point, even if it were beyond doubt that Humphrey took all that he purchased by delivery from the sheriff. But there was no necessary constructive connection between the possession of the sheriff and that subsequently taken by the defendants. In Higginson *v.* York, 5 Mass. 341, the case was that one Phinney having entered the close of B., and cut cord wood, sold it to one Kenniston, who afterwards went with York the defendant to the close and removed the wood, without any knowledge that a trespass had been committed by Phinney. It was ruled that the *value of the wood* might be recovered against the defendant in trespass. The taking was unlawful, though the wood had been purchased from the first trespasser, for it was not obtained by immediate delivery.

The remaining assignment of error is that the court submitted to the jury to find whether the defendants took the plaintiff's lumber from the eddy lot, drawn after Cottrell left, when there was no evidence of such taking. The evidence, however, is not certified to us, and it is not all on our paper-books. We cannot therefore say that no such evidence was given.

The judgment is affirmed.