IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY,

AT JUNE TERM, 1861.

---

### HARWOOD *vs.* SMETHURST.

1. An action of replevin will not lie where there is only an unlawful detention of the property: to sustain the action, there must be an unlawful taking.

2. Where the defendant pleads *non cepit*, and property in himself or another, to entitle the plaintiff to recover, he must prove his right to the possession of the property and the unlawful taking by the defendant.

3. The plaintiff is not bound to prove a caption, unless it is denied by *non cepit;* nor is he bound to prove his property, unless his right is denied by plea of property in defendant or another. Pleading one defence without the other admits that which is not denied.

---

An action of replevin was brought by Smethurst against Harwood, to recover possession of certain furniture in the Columbia Hotel, at Cape Island. The cause was tried at the Cape May Circuit, and a verdict rendered for the plaintiff. On the coming in of the *postea*, the defendant obtained a rule to show cause why the verdict

195

should not be set aside, and a new trial granted. The facts in the case sufficiently appear in the opinion of the court.

Argued at February Term, 1861, before the Chief Justice, and Justices OGDEN, VREDENBURGH, and BROWN.

*Kingman,* for defendant.

*Browning,* for plaintiff.

The CHIEF JUSTICE. This was an action of replevin, brought for certain furniture in the Columbia House, at Cape May, leased by the plaintiff and one Lapsley and Van Dyke, as trustees, to the defendant, Harwood, together with the hotel.

The lease contained a clause that, on non-payment of the rent and other moneys stipulated to be paid by Harwood, on giving sixty days' notice of their intention, the lessors might re-enter and take possession of the real and personal property named in the lease.

This notice was given, and, after its expiration, demand for the delivery of the personal property was made of Harwood, who refused to give it up. Thereupon the plaintiff brought replevin and recovered. The pleas were *non cepit,* and property in defendant.

The points relied upon for setting aside the verdict are—

I. That the proof of property in the plaintiff was not sufficient to maintain the action.

II. That the demand of possession was not sufficient, it having been served personally upon the defendant at Philadelphia, and not at Cape Island, where the property was situate.

III. That the evidence did not show a sufficient taking to entitle the plaintiff to a verdict on the issue of *non cepit.*

If the last point be well taken, it disposes of the case. It will be first considered.

Until the decision of *Haythorn* v. *Rushforth*, 4 *Harr.* 160, it was not an open question in New Jersey whether replevin would lie for a mere unlawful decision. In *Bruen* v. *Ogden*, 6 *Halsted* 370, Ewing, C. J., adopted and approved of the doctrine established by the Supreme Court of New Y ,k, in *Pangburn* v. *Partridge*, 7 *Johns.* 140 ; *Thompson* v. *Button*, 14 *Johns.* 84 ; *Clark* v. *Skinner*, 20 *Johns.* 465 ; *Marshall* v. *Davis*, 1 *Wend.* 109 ; *Meany* v. *Head*, 1 *Mason* 322. In the last case, Story, Justice, said : At common law a writ of replevin never lies unless there has been a tortious taking, either originally or by construction of law, by some act which makes the party a trespasser *ab initio*. This remark is cited by Chief Justice Ewing, in Bruen *v.* Ogden, as a true statement of the law.

This case of Bruen *v.* Ogden turned upon the question whether the remedy by replevin was not confined to cases of distress, instead of extending to all cases of unlawful taking, and the ruling was that it was not. That has always been the point principally controverted.

There can be no doubt that the remedy was originally devised as a counter remedy to that of distress, which was by act of the party, and liable to abuse. It was so considered by 3 *Blackstone's Com.* 146, but was soon extended to all cases where the custody of goods had been changed by the wrongful act of one of the parties. *Com. Dig.*, "*Replevin*," A ; 2 *Roll. Abr.*, "*Rep.*," B. The theory of the action applied to all cases where there had been a forcible change of the possession of chattels.

The object of this writ was to restore the possession to the party who had been deprived of it *in invitum* on his giving a pledge to return, if return should be adjudged, and the defendant was required to justify by avowry or cognizance the taking, by showing his authority to take the goods.

The declaration in replevin charges a taking and de-

tention. The plea of *non cepit* seems to prove, as it puts the party upon proof of a taking by its very terms, and is a good answer to the declaration, and there must be a taking as the ground of the action. I am not able to see why such a plea should be an answer to the declaration if it does not put the plaintiff to the proof of what it denies. If an unlawful detention is sufficient, why can no precedent be found of such a plea as *non detinet?*

The decided cases in England, where the point has been distinctly raised and argued, all hold a wrongful taking necessary to the maintenance of the action. So also in Ireland. *Ex parte Chamberlain*, 1 *Sch. & Lef.* 320; *Shannon* v. *Shannon*, 1 *Sch. & Lef.* 324; *In re Wilson*, 1 *Sch. & Lef.* 320, decided by Lord Redesdale upon great advisement and conference with the other judges.

In *Galloway* v. *Bird*, 4 *Bing.* 299, which was an action where the goods had been delivered upon a contract, Best, C. J., delivering judgment, said the authorities all lay it down that replevin can only be maintained where goods are taken, and not where they are delivered upon a contract; and this is clear upon the form of the pleading, which is, that the defendant took and detained the goods, the plea to which allegation is *non cepit*. No instance can be found in the digests or abridgments of replevin having been brought upon a delivery under a contract. That case is like this in this material point—here the furniture was put into the possession of the defendant by the plaintiffs.

The last occasion on which the point has been agitated in Westminster hall was in *Mennie* v. *Blake*, 6 *Ellis & Black* 843, decided in 1856, when the subject was ably and thoroughly discussed by Justice Coleridge. The conclusion reached is, that replevin is not maintainable unless in a case in which there has been first a taking out of the owner's possession.

The Supreme Court of New York uniformly held this doctrine until it was altered by statute. *Pangburn* v.

*Partridge,* 7 *Johns.* 140; *Hopkins* v. *Hopkins,* 10 *Johns.* 373; *Thompson* v. *Button,* 14 *Johns.* 87; *Gardner* v. *Campbell,* 15 *Johns.* 402; *Marshall* v. *Davis,* 1 *Wend.* 109. So in Alabama, *Wheelock* v. *Cozzens,* 6 *How. & Miss. Rep.* 279; 2 *Murphy* 357. In Illinois, *Wright* v. *Armstrong,* 1 *Breese* 130. In North Carolina, *Cummings* v. *McGill,* 2 *Taylor* 98.

In Massachusetts the rule is the other way. There an unlawful detention has been held sufficient. *Badger* v. *Phin-ney,* 15 *Mass.* 359; *Baker* v. *Failes,* 16 *Mass.* 147. In the last case Mr. Justice Putnam made an earnest, though it seems to me unsuccessful effort to show that the doctrine of the court was in accordance with the common law. The reasoning of the learned judge is very thoroughly refuted in the very able note of Mr. Rand, the editor of the last edition of the Massachusetts reports. It is not my purpose to attempt a review of this opinion, exhausting, as it does, the argument on that side of the question.

Upon a careful examination of the opinion, it will be found that not a single case was cited in which it was ever held in England, or out of Massachusetts, that replevin laid where there had been no actual taking of the goods by the defendant. No case in which it is held that replevin lay for a chattel delivered by the plaintiff to defendant, and afterward unlawfully detained. Every case cited is one of a chattel taken against the will of the possessor, either in distress or otherwise.

The learned judge endeavors to maintain himself by citing cases arising under the law of distress, in which it has been held that replevin will lie when the distrainor, by abuse of his authority, becomes a trespasser *ab initio,* as a refusal to give up cattle distrained damage feasant after tender of sufficient amends. This, before the decision in the Six Carpenters' case, was held to make a trespass *ab initio,* although a mere *non feasance.* But, as I have already remarked, replevin was originally a counter

remedy to distress, and was intended to be co-extensive with that remedy.

But the main point made by Justice Putnam is, that there are cases in the law where a withholding has been held a taking. He puts two. One in Rescous, where one distrains beasts damage feasant, and while driving them away to pound, they go into the house of the owner, who withholdeth them, and will not let them be impounded. This withholding is a trespass, citing *Terms of the Law, title " Rescous."* This seems a quibble upon words, rather than a grave argument. Withholding is used in this passage in the sense of taking and keeping possession, which is the act described; it is the act of the rescuer depriving the distrainor of his distress against his will.

The other is the familiar principle that the allegation of a taking at the place laid in the declaration is proved by the defendants having had the goods there. This is only one application of the rule, that by the first tort in taking possession no right is acquired, and every subsequent removal is a trespass. *Walton* v. *Kersop*, 2 *Wils.* 354; *Abercombie* v. *Parkhurst*, 2 *Bos. & Pul.* 480; *Johnson* v. *Woolyer*, 1 *Strange* 509.

It will be remembered that the point to be made out is, that a mere withholding without a previous taking is a caption, and it is obvious that neither of these cases proves that. The whole argument of the opinion seems to be this, that replevin will lie for a mere detention of chattels, because, in some cases of *distress*, it will lie although the distress was originally lawful, but subsequently became unlawful. This has been disposed of. And because, in some cases, a detention has been held to be equivalent to a caption. This has been shown to be inaccurate.

The cases cited by Justice Putnam, although not establishing what he desires, do show that replevin is a proper remedy in *all cases* of *distress* where the right to the distress did not exist or is gone, and in all cases of taking

when trespass will lie, although the taking is only tortious by relation, and not originally.

The cases in Pennsylvania are not decided upon such grounds as to make them authority on this point in this state. Morris, in his work on replevin, says, it seems not to have been thought necessary in Pennsylvania to inquire exactly into the extent of the English law on the subject, the judges saying that however it might be in England, it was well settled that in Pennsylvania the action lay in all cases where one man claimed property in the possession of another. *Morris on Replevin* 38; *Weaver* v. *Lawrence,* 1 *Dallas* 57, and other cases cited by him.

It may be proper to remark, that by some it has been regarded as an argument worthy of notice in favor of the maintenance of the action for a mere detention, that where no other plea than *non cepit* is pleaded, and the plaintiff fails to prove a caption, he is nonsuit, and there is no judgment of *rotorno habendo.* The cases say there can be no return adjudged, unless some plea be pleaded praying a return. In such a case the chattel which on the service of the writ had been delivered to the plaintiff would remain with him. He would thus, although failing in his action and being condemned in the costs, in some cases recover the chattel, although there had been no unlawful taking.

It will be perceived at once that instead of proving that the action will lie for an unlawful detention only, it proves the reverse, for the plaintiff is nonsuit, with costs. The failure of the defendant to regain his property in such a case results from his neglect to plead a plea of property, putting the plaintiff's allegation of property in himself in issue with a prayer for a return of the goods. The case would then stand thus: a verdict for the defendant that he did not take the property, which would absolve him from the costs, and a confession by default of the plaintiff's property.

If the plea of *non cepit* is pleaded, and also a plea of property in the defendant *absque hoc*, &c., and at the trial the plaintiff fails to prove the tortious taking, the defendant would be entitled to a verdict on that plea, and also upon the plea of property; for if the defendant did not take the property from the plaintiff, the plaintiff would not be in a position in that action to question the defendant's right. If the plaintiff was nonsuit for failure to make out the trespass, the ground of his action, a return would be adjudged on the prayer of his second plea.

In *Bacon's Abridgment, title "Replevin," I*, it is said, in replevin of goods taken at D., the defendant pleads in abatement, that they were taken at another place *absque hoc*, that they were taken at D. and *pro retorno habendo*, avows for rent on a lease for years, &c., the plaintiff replies and traverses the lease, &c., this is ill; for though the defendant, when he pleads in abatement, must avow also to have a return, yet the plaintiff cannot answer it, but must take issue on the other matter, for the avowry in such a case is only in the nature of a suggestion to have a return of the goods. 1 *Saund.* 347; 1 *Vent.* 127; 1 *Salk.* 93; *Willes* 475, *Bullythorpe* v. *Turner.*

If the plaintiff in replevin is nonsuit before declaration filed, the return of the goods is adjudged; if after declaration filed, no judgment of *retorno habendo* is rendered, unless a plea admitting such a judgment has been filed as an avowry or a plea in bar showing property out of the plaintiff. *Gilbert on Rep.* 169, 170.

The rule seems to be that where *non cepit* and another plea entitling to a return are pleaded, if *non cepit* is not found for the plaintiff, or the plaintiff is nonsuit for failure to prove a caption, there will be judgment of *retorno habendo.*

The plaintiff's property in the goods being denied upon the record, or not being admitted, and a taking being essential to the maintenance of the action, any finding

on the other issue is immaterial. It is the case of two facts necessary to be proved to maintain an action. If there is a failure to prove either, it is equivalent in effect to a failure to prove both. The plaintiff is not bound to prove a caption, unless it is denied by *non cepit*, nor his property, unless by plea of property in another, or in defendant and another, or in defendant. Pleading one without the other admits that which is not denied.

We frequently find in the books mention of replevin in the *dentinet*, said to be now obsolete. This, by some, has been regarded a separate form of action for the recovery of goods only detained, not taken. This is a misapprehension. There was but one form of action.

In *Fletcher* v. *Wilkins*, 6 *East* 283, Lord Ellenborough, C. J., said, "The industry of the gentlemen who very ably argued the case, has not succeeded in discovering a mode of proceeding by action of replevin to recover damages, as contradistinguished from proceedings to have the goods again. There does not appear in any of the books any proceeding in replevin which has not been commenced by writ requiring the sheriff to cause the goods of the plaintiff to be replevied to him or by plaint in the sheriff's court, the process in which is a precept to replevy the goods." What was called replevin in the *detinet* was only a mode of declaring.

If on the issuing and service of the ordinary writ of replevin, the goods were not returned to the plaintiff, the declaration was *quare cepit et adhuc detinet contra vad et pleg.*

If the goods were returned, the declaration was *quare cepit et ea detinet contra vad et pleg quousque.* 2 *Saund.* 347; *Rast. Ent.* 560; *Co. Ent.* 610, *b; Com. Dig., Pl.* 3, *R.* 10.

If the declaration was in the *detinet* the plaintiff recovered the value of the goods, damages for the taking, and costs, but never the goods themselves. *Com. Dig., Pl.* 3, *R.* 10; *Fitz. N. B.* 69.

What has been called the modern action was said to be in the *detinuit*, because the declaration charged the defendant with taking and detaining until suit brought; *detinuit quousque* was the language.

The obsolete mode of proceeding was said to be in the *detinet*, because the declaration charged that the defendant *adhuc detinet* after the charge of taking.

As the declaration, in both, charges a caption, and both are commenced by the same writ, it is evident that neither could be maintained without proof of a previous caption.

The case of Haythorn *v.* Andrews has been cited as an authoritative decision of this court that a taking is not necessary to maintain the action. It cannot be so regarded. Both the judges who delivered opinions in that case repudiated that idea. Both put their opinions upon the ground that the circumstances of the case showed a tortious taking; that trespass would have lain. Mr. Justice Whitehead expressly said the question was, did the conduct of defendant, the time the demand was made, amount *to a tortious taking* thereof, or was it such an interference with the property as would entitle the plaintiff to maintain an *action of trespass* against him. He expressly said it was not necessary to express an opinion upon the point whether replevin would lie for an unlawful detention. Justice Elmer also cited the opinion of Chief Justice Ewing, in Bruen *v.* Ogden, as the law, that replevin cannot be maintained without proof of an unlawful taking; that a wrongful detention was not sufficient; and then proceeds to discuss whether the plaintiff might have maintained trespass on the facts proved, and came to the conclusion that he could. I have never been able to see how that case could be sustained upon the principles adopted by the court.

Buckley and Haythorn were the original owners of the machinery; the plaintiff sold his right to Buckley, who put the machinery into a mill he rented of defendant;

with it he manufactured goods out of stock furnished by defendants at a certain price per yard. The defendants stopped furnishing stock, and they and Buckley made another arrangement, by which the defendants were to work the machinery then in their mill, part of the time in payment of the rent, and Buckley to do any work that he could get. Buckley had the key of the building, and retained the control of the machinery. He made a bill of sale of it to the plaintiff, and went to the mill with him, and demanded it of the defendant, who refused to let it go until they got other in its place.

As the case appears in the report, the defendants had a right to use the machinery, and were, at the time of the demand, in actual possession of it, solely or jointly with Buckley. How the refusal to give up that possession, which they had acquired by agreement with Buckley, could make them trespassers, it is hard to perceive. The property came to their possession by delivery from Buckley, or was theirs by contract. The demand and refusal could not make them trespassers; it was an admission that they were in possession. It was to terminate that possession.

It has always seemed that that case could not be maintained except upon the principle of an unlawful detention. It has therefore been considered as an authority for the doctrine that replevin would lie upon that alone. If the defendants had no lawful possession at the time of the demand, and then took possession, it was rightly decided upon the principles assumed. That case is no authority for a doctrine which the court repudiated in deciding it, although the decision may not be supported except by assuming the doctrine to be the law.

Although this remedy may be prompt, efficacious and beneficial, and in many cases the only one giving the necessary relief to a party having a right to the possession of chattels, I do not feel at liberty, entertaining, as I do, a clear conviction that a tortious taking is necessary by

the common law as the ground of the action, to indulge in judicial legislation for the purpose of enlarging the scope of the action.

If we sustain this verdict we must do it without a shadow of pretence of an unlawful taking ; for here the property came into the hands of the defendant under a lease, and was, at the time of the demand, so held, although the lease was forfeited by non-payment of the rent.

The verdict should be set aside, and a new trial granted.

Justices OGDEN and BROWN concurred.

VREDENBURGH, J., dissented.

SEE *same case*, 1 *Vr.* 230; 2 *Vr.* 502.